## Robinson v. Pennsylvania R. R., Appellant.

*Railroads—Location—Width of right of way—Act of 1846.*

While the directors of a railroad company have the discretion to locate the right of way of the railroad, the exercise of such discretion to an exceptional width when challenged in a court of law must be sustained by showing the existence of the circumstances under which the charter of the company authorizes the discretion to be exercised.

Under the act of April 13, 1846, P. L. 319, the power of the Pennsylvania Railroad Company to take land was expressly limited to a strip sixty-six feet wide "except in the neighborhood of deep cuttings or high embankments, or places selected for sidings, turnouts, depots, engine or water stations."   The company took a strip one hundred and forty feet wide

through the whole of a farm for the length of over four thousand feet. The company's engineer testified that there was a cut on plaintiff's farm of thirteen feet, and an embankment of the same height, and that by the ordinary rule of engineering forty-nine additional feet would be required at such points. There was no evidence to show the length of the cut or its location. There was also no evidence to show the location of any sidings, turnouts, depots, engine or water stations. The engineer testified that the additional width was taken for the future uses of the road. *Held*, that under the evidence the company had no right to take any land in excess of sixty-six feet, and that plaintiff was entitled to recover in ejectment land taken in excess of such width.

Argued Feb. 9, 1894. Appeal, No. 161, Jan. T., 1894, by defendant, from judgment of C. P. Chester Co., April T., 1893, No. 8, on verdict for plaintiff, Moncure Robinson, Jr., and wife. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment. Before WADDELL, P. J.

At the trial it appeared that in October, 1890, the Pennsylvania Railroad, in locating its Trenton branch, took a strip of land of an average width of one hundred and forty feet and forty-two hundred and fifty feet long through plaintiff's farm.

Under the act of April 13, 1846, P. L. 319, the power of the Pennsylvania Railroad Company to take land was expressly limited to a strip sixty-six feet wide, " except in the neighborhood of deep cuttings or high embankments, or places selected for sidings, turnouts, depots, engine or water stations."

Joseph U. Crawford, the company's engineer who located the line, testified that there was a cut on plaintiff's farm of thirteen feet, and an embankment of the same height, and that by the ordinary rule of engineering fifty additional feet would be required at such points. There was no evidence to show the length of the cut. The engineer further testified : " Q. What in addition was taken ? A. In addition we have .taken, as the ground is favorable at this point, an additional width for the necessary sidings and turnouts for station purposes, in reasonable anticipation of the uses of the railroad in the future. Q. That would be 24 feet more ? A. Yes. .. . . . Q. Will you enumerate the uses to which that is to be applied ? The purposes ? A. For sidings, for the possibility of accumulation of cars there in case of mishaps. There

has been a very large tonnage on that road, from 900 to 1000 cars a day, taking in each direction, and that 4200 feet is of good direction and trackage with light grading, and these are an advantage to put sidings at that point which will accommodate two or three trains. Q. Then, as I understand you, your taking there is, first, the statutory allowance of four rods, the additional allowance for cutting and filling, and the rest is for sidings and turnouts, and station purposes? A. Yes, sir. Q. And that covers the 140 feet taken? A. That covers the 140 feet taken; yes, sir. Q. Is there a public road which crosses Moncure Robinson's property? A. Yes, we carry our tracks over that road, over the road known as the Paoli road, which goes close to his house. We cut the road and pass it under our tracks.' Q. Is that amount of land necessary for the operation of this road? That amount of land is required for the operation of this road, for the construction of the road, for embankments, and for the additional amount? A. Yes. It was taken in reasonable expectation of the uses of the road in the immediate future. . . . Cross-examined: Q. You are talking about the terminal in Philadelphia, and I am talking about a road that runs through a county in the state. You knew it would be many years before six tracks would be there. A. I simply said that with the traffic of 1000 cars daily in each direction, anything that congested the traffic would immediately require ample siding facilities, and these siding facilities can only be established at certain points, according to grade, according to alignment, and according to the reasonable cost for grading these sidings. . . . I say that from the east end to the west end of the Robinson property we took 70 feet on each side of the center line, and we took that for the reason that it invited us to go there, with an expectation of the future uses of this road. It invited us, above all other points on that line, to establish sidings at that point. If you ask me if at a level point we took 70 feet on each side of the center line, I say we did. We do not wish to take a serrated, indented line for our right of way boundary. It would be a damage to everybody concerned to do that, and it is not customary. Q. You took just as much land as you thought you would want for the future uses of the railroad? A. We were governed in taking our widths by the grades, the cutting and filling of the rail-

road through the Robinson property, and other property. Q. Having found that, you made that the width you took through the whole? A. Yes, the average width. Q. The greatest fill on the Robinson property is 13 feet, multiply that by 3 gives you practically 40 feet, add 10 gives you 50 feet, and add 66 gives you 116 feet? A. Yes."

The court charged in part as follows:

" Mr. Crawford tells you that he directed this route to be run; to be located; and to be marked upon a map. That map was submitted to Mr. DuBarry, the vice president of the road; that he subsequently saw that map, and it bore the signature of the secretary of the company, as well as the corporate seal of the company. Was that the act of the company? Did it adopt the route which Mr. Crawford had directed to be run, and had located? Of course an engineer must be the first officer to point out where the road should go, in his judgment. He marks it, not exactly upon the ground, but upon a map, for the use of the company; to show the officers where, in his judgment, the road should be located. But, in our opinion, this would not be sufficient, even if it was approved by the vice president of the road. In our judgment, it would require the action of the company. There must be some action on the part of those who represent the company; and the chief engineer and the vice president, you will understand, do not represent a railroad company in its corporate capacity. It must be recognized through the officers of the company, they who constitute the corporation itself, and these are the president and its board of directors. But the question for our consideration is, whether or not you can say here that this route, from the evidence which is submitted (and it is all in what Mr. Crawford has said), was adopted by the railroad company as a corporation. If you are satisfied from the testimony that the company acted upon it, then that is sufficient, in my judgment, to locate the road. In the opinion of the court it is not required that the corporate officers shall fix the width of the route, or the amount of land taken. They are called upon, by the act, to designate and point out the route, and the act itself fixes the width which that shall be, unless they see fit to limit it in extent.

" [Then the question following that is, if they located this route, has the company appropriated to itself more land than

the law allows ?    Has it taken more ground in the construction of this road than the act of assembly warrants ?] [1] . . . . [In the opinion of the court this company is limited in its taking of ground to sixty-six feet.    The act itself prescribes the amount of land to be taken.    It authorizes it, in locating the line, not to take more than sixty-six feet, except where certain contingencies exist, such as deep cuts, or high embankments, or where, in the judgment of its officers, it is necessary to locate sidings, or stations, or water tanks, or something of that kind, and there they are authorized to take more.    Is there any evidence in this case showing that such a thing was necessary on the property of Mr. Robinson ?    I fail to discover it if there is.] [2]    It is true, Mr. Crawford says that they have thought that it might be necessary, some time in the future—this is about the substance, as I gather it, of his testimony—that it might be necessary some time in the future to locate sidings on Mr. Robinson's ground ; that it might be necessary to locate stations there, or buildings of some kind, for the use of the road.    When, he does not know.    He is not able to tell, and nobody else can.    It may never be necessary to do so.    If the road increases in tonnage, in business, then it may become necessary.    But if such a thing should not occur, then it might not be necessary to locate them.    The act seems to contemplate, in the estimation of the court, that that necessity is to be determined at or about the time the road is located.    That is, the company must select where it will locate its sidings, where it is necessary to have these turnouts, where it is necessary to have switches, where it is necessary to erect its stations, water tanks, and things of that kind ; and, having done so, it is at liberty, if necessary, to exceed sixty-six feet in width.    [If you can find any testimony in the cause which would justify you in concluding that a width of more than sixty-six feet was necessary in the location of this road through Mr. Robinson's ground, it is a question for you. I can only say to you that I have not been able to discover it, and I recall nothing in the case at this time which leads me to entertain that belief.] [3] . . . .

" Whether they are entitled to recover the sixty-six feet, as it occurs to my mind, will depend upon whether or not you find that the company itself, as a company, has authorized the taking of this land.    That is the first point I called your at-

tention to; whether or not there is evidence here which justifies you in finding that the company, as a corporation, has acted upon this matter, and has located the road by determining this route. [If it has determined this route, then it will be entitled, in my estimation, to retain the sixty-six feet.] [4] If it has failed as a corporation to determine that and act upon it in the way the law requires, then it would not be entitled even to retain the sixty-six feet."

Defendant's point was as follows:

"1. Under all the evidence in this case the verdict of the jury must be for the defendant. *Answer.* We cannot say that, as you have discovered in the course of my charge. Your verdict will be in accordance with the points which I have suggested to you as arising here. Whether it should be for the plaintiffs to the extent which they claim or not, will depend upon what I have already said to you relative to the location of the road." [5]

The verdict was as follows: "The jury say they do find for the plaintiffs for the land named in the writ in excess of sixty-six feet." Judgment was entered upon the verdict. Defendant appealed.

*Errors assigned* were (1-5) above instructions, quoting them; (6) that the verdict was incurably bad, the action being for the land described in the writ, and the verdict for the part of the premises without designating it; (7) that the judgment entered upon the verdict is void for uncertainty, and does not indicate the part named in the action of ejectment, nor from what part the portion recovered is to be taken.

*John J. Pinkerton,* for appellant.—The uncontradicted testimony in this cause shows that there were cuts and embankments upon plaintiff's land, to the extent of thirteen feet in height; with such a condition of the land, fifty feet more were required for embankments, gutters and space on which to build side fences. The act of assembly conferring upon the company authority to take, places no limit to the appropriation "in the neighborhood of deep cuttings, or high embankments." How then could the question of our right to take be one for a jury? The taking being an admitted fact, certainly our

right to take under the act is a question of law to be pronounced by the court, and not one for the determination of a jury. In the face of the testimony of Mr. Crawford, to submit to a jury the question as to whether the amount of land appropriated by the company is contrary to the statute, is certainly error.

The act expressly enumerates "places selected for sidings, turnouts, depots, engine, or water stations," as those exempted from the restriction to four rods in the appropriation of lands for railroad purposes, and in construing this authority thus given to railroad companies, this court has decided not only that the power to construct sidings is commensurate with the power to build the railroad, but that the place to be selected for them falls within the absolute discretion of the company. The word "railroad," ex vi termini, includes sidings: Black v. R. R., 58 Pa. 252; R. R. v. Speer, 56 Pa. 335; R. R. v. Williams, 54 Pa. 107; Getz's Ap., 10 W. N. 453; 1 Redfield on Railways, 245; R. R. v. Wilson, 17 Ill. 123.

That a railroad company may, in condemnation proceedings, appropriate for the construction of its road more land than is required for its immediate needs, and with a view to what may be demanded by an increased passenger and freight traffic, is abundantly decided in this state: Pittsburg Junction R. R. Co.'s Ap., 122 Pa. 511; Ry. v. Peet, 152 Pa. 488; Lodge v. R. R., 8 Phila. 345.

The verdict in this case is too vague and uncertain to sustain the judgment entered thereon. There is nothing on or dehors the record which indicates the part recovered, or from what part the portion recovered is to be taken. The sheriff would not know where to begin or where to end, and a delivery of the land recovered to the plaintiffs by him would be impossible: Smith v. Jenks, 10 S. & R. 153; Stewart v. Speer, 5 Watts, 79; Harrisburg Borough v. Crangle, 3 W. & S. 460; Nolan v. Sweeny, 80 Pa. 77; Hunt v. McFarland, 38 Pa. 69.

*John G. Johnson* and *R. Jones Monaghan, C. H. Krumbhaar* and *J. Frank E. Hause* with them, for appellees.—A grant of power to a railroad company must be strictly construed: Com. v. R. R., 27 Pa. 351; Charles River Bridge v. Warren Bridge, 11 Pet. 420; U. S. v. Arredondo, 6 Pet. 691; Bridge Co. v. Clinton Co., 157 Pa. 389; R. R. v. R. R., 157 Pa. 47.

The final location of this branch railroad and the taking of land for the construction thereof, under the charter of defendant company, must be by the action of the president and directors, acting as a corporation: New Brighton R. R. v. R. R., 105 Pa. 20; Williamsport R. R. v. R. R., 141 Pa. 417; Pittsburg Junction R. R. Co.'s Ap., 122 Pa. 528; Hagner v. R. R., 154 Pa. 477.

The cut thirteen feet deep on plaintiff's property does not, under the evidence, justify a retaining by defendant of more than four rods of land.

There was not a syllable of testimony to show any necessity, either present or within a reasonable future time, for taking more land than the four rods allowed by law: Penna. R. R. Co.'s Ap., 93 Pa. 159; Pittsburg Junction R. R. Co.'s Ap., 122 Pa. 531; O'Hara v. R. R., 25 Pa. 448; Shick v. R. R., 1 Pearson, 261; R. R. v. Davis, 43 N. Y. 144; 6 A. & E. Ency. L. 541; R. R. v. Williams, 54 Pa. 107; Black v. R. R., 58 Pa. 252.

A fair and safe rule as to the measure of proof and the determination thereof would be by analogy to the equity rule in cases of equitable ejectment: Lodge v. R. R., 8 Phila. 345; Elbert v. O'Neil, 102 Pa. 305; Nicolls v. McDonald, 101 Pa. 519; Reno v. Moss, 120 Pa. 68; Hess v. Calender, 120 Pa. 152; Wylie v. Mansley, 132 Pa. 68; Saunders v. Gould, 134 Pa. 457; Friend v. Lamb, 152 Pa. 533.

The title acquired by the railroad company is a conditional fee, and not a mere easement: R. R. v. Paper Mills, 149 Pa. 20; Ry. v. Peet, 152 Pa. 492.

The question here is one of title and all the conditions precedent must appear or no title is acquired by the railroad company: Williamsport R. R. v. P. R. R., 141 Pa. 414; 1 Wood's Ry. Law, 659, 648, 714; 2 Ib. 744, 759, 760; Hazen v. R. R., 2 Gray, 580; Pinkerton v. R. R., 109 Mass. 539; 19 A. & E. Ency. L. 832; Beck v. R. R. & Canal Co., 39 N. J. L. 45; R. R. v. Bohm, 34 Ohio, 114; Heise v. R. R., 62 Pa. 72; R. R. v. Porter, 29 Pa. 169; R. R. v. R. R., 141 Pa. 414.

The act of April 10, 1867, P. L. 993, does not give the power claimed by defendant: Penna. R. R. Co.'s Ap., 115 Pa. 526; Akers v. R. R., 43 N. J. Law, 110; Water Works v. Rivers, 115 U. S. 674; Bird v. R. R., 8 Rich. Eq. 46; Grand Trunk

Co. v. Richardson, 91 U. S. 472; Brooks v. Whitmore, 139 Mass. 356; Lodge v. R. R., 8 Phila. 346; Lance's Ap., 55 Pa. 26; Fowler v. Scully, 72 Pa. 461; Endlich, Statutes, § 398.

The words "or elsewhere" do not sufficiently extend defendant's powers: Pardee's Ap., 100 Pa. 412; Allen's Ap., 81* Pa. 302; Bucher v. Com., 103 Pa. 534; Schenley's Ap., 70 Pa. 102; Swartz's Ap., 11 Cent. R. 681; Hilke v. Eisenbeis, 104 Pa. 517; King v. Thompson, 87 Pa. 369; Renick v. Boyd, 99 Pa. 559; Page v. Allen, 58 Pa. 346.

The verdict and judgment are sufficiently certain to enable the sheriff to deliver possession of the land found by the jury to be wrongfully in possession of defendant: Miller v. Casselberry, 47 Pa. 377; Smith v. Brotherline, 62 Pa. 471; Wells v. Van Dyke, 109 Pa. 336; Cope v. Kidney, 115 Pa. 232; Oliver v. R. R., 131 Pa. 408.

OPINION BY MR. JUSTICE MITCHELL, May 21, 1894:

Prima facie the authority of the railroad company defendant to take land for its right of way is limited to a width of sixty-six feet. Any greater right must depend on the existence of one or more of the exceptional circumstances specified in the charter, and such circumstances must be shown. The learned judge below was quite within bounds in saying to the jury that they might consider that matter, but that he recollected no evidence of any necessity for additional width. He would have been justified in telling them positively that there was no such evidence in the case. It is true that Mr. Crawford, the engineer who located the line, testifies that there was a cut on plaintiff's farm of thirteen feet, and an embankment of the same height, and that by the ordinary rule of engineering forty-nine additional feet would be required at such points. This would only justify a width of one hundred and fifteen feet, not the one hundred and forty taken, but even as to this width there was no effort to show the length of the cut, or its location. A necessary cut or embankment one thousand feet long would not justify taking the requisite additional width for the whole four thousand feet that the road runs through plaintiff's land, nor would the cut at one side of the farm justify the taking at the other. The burden of proof of the necessity both as to extent and location was upon the defendant, and was not met by any evidence in the case.

The same view applies to the other necessity claimed, that of space for stations, sidings, turnouts, etc. There was no effort to show that any particular location was made of any of the appurtenances to the line, specified in the statute as giving occasion for additional width of appropriation. In fact the substance of the whole evidence on the subject is contained in a few lines of the testimony of the engineer, "from the east end to the west end of the Robinson property we took seventy feet on each side of the center line . . . . with an expectation of the future uses of this road. . . . If you ask me if at a level point we took seventy feet on each side of the center line, I say we did. We do not wish to take a serrated indented line for our right of way boundary." It is very clear from this testimony that an extra width of thirty-seven feet on each side of the center line, more than double the width the law allows, was taken, not for cuts or banks, nor for stations or sidings etc. but for the general purposes of the road. This was in plain excess of the statutory authority.

It is not intended to interfere with the discretion of the corporation in the location of its stations, sidings, etc., nor with its right to do what good engineering requires. But the exercise of both must be in good faith for the purposes the statute permits, and the necessity, extent and location of extra appropriations for such purposes must be definitely shown. The charter limitation of sixty-six feet is mandatory, except in the cases the charter itself specifies, and it cannot be set aside or evaded at mere will. While the discretion is in the corporation, its exercise, when challenged in a court of law, must like every other right be sustained by showing the existence of the circumstances under which the charter authorizes it.

How far a railroad company may anticipate its future needs is a matter not involved in the present case. The statute limits the authority to take property for its right of way for the general uses of the road to sixty-six feet, with additional width in specified circumstances. If sixty-six feet is all that can be taken for present use, certainly no more can be taken for an anticipated future use.

The verdict in the case is defective in not defining the tract found to be rightfully taken, but there is no difficulty in putting it into proper form. The jury have settled all the essential

facts. The testimony of the engineer was that the road was located by a central line, and the jury have found that the right of appropriation was properly exercised as to thirty-three feet on each side of such line. As to the strip thus described the jury found for the defendant, as to all outside of it for the plaintiff. The verdict will be so amended, and thereupon the

Judgment affirmed.