Moncure Robinson, Jr., and Lydia M. B. Robinson, Appellants, v. The Pennsylvania Railroad Company.

*Railroads—Eminent domain—Practice—Res judicata—Construction of charter.*

The universal practice upon well settled law, under mode pointed out by the supplement to charter of the Pennsylvania Railroad Company, has been to assess all the damages done, or likely to be done, to the premises through which a railroad passes, including materials taken from adjoining land, and at a different time, although the bond, for appropriation of the strip for right of way, and the petition in the proceedings, set forth and are for damages for right of way only, and not for damages for materials so taken from adjoining lands.

Under said supplement, a different cause of action does not exist for materials so taken, and a petition for the appointment of a jury to assess such damages will, on motion, be stricken off, as res judicata.

Argued Nov. 15, 1897. Appeal, No. 160, Nov. T., 1896, by plaintiffs, from order of C. P. Chester Co., Miscel. No. 1905, dismissing petition for appointment of a jury of view. Before RICE, P. J., WICKHAM, BEAVER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Petition for jury of view to assess damages for materials alleged to be due by the Pennsylvania Railroad Company.   Before WADDELL, P. J.

It appears from the record that plaintiffs' petition filed July 6, 1896, was as follows :

The petition of Moncure Robinson and Lydia M. B. Robinson respectfully represents :

" That the Pennsylvania Railroad Company, a corporation duly incorporated and existing under the laws of the Commonwealth of Pennsylvania, heretofore surveyed, laid out, and constructed a branch line of railroad through and upon the lands of your petitioners, in the township of Tredyffrin, in said county, and in so doing said company took, used and occupied a strip of land containing about $7\frac{315}{1000}$ acres, more or less, which strip of land is particularly described by metes and bounds in a certain petition filed by said company in this court on March 26, 1895, wherein said company requested the appointment of five persons as viewers to assess the damages done to the petitioners by reason of the entering upon and occupation of said strip of land.

" That said company, in the construction of said branch line, entered upon the land of the petitioners adjoining and in the neighborhood of the strip above referred to, and quarried, dug, cut, took and carried away therefrom large quantities of stone, gravel, clay, sand, earth and other suitable materials necessary and proper for the construction and maintenance of said line.

" That your petitioners and the said company have endeavored to agree, but cannot agree, upon the compensation to be paid for the damage done in consequence of the quarrying, digging, cutting, taking and carrying away of the materials aforesaid.

" Wherefore, your petitioners pray the court to appoint as viewers five disinterested persons, and fix a time not less than twenty or more than thirty days thereafter, for said viewers to meet upon said premises, and to order and direct that said viewers, having been first duly sworn or affirmed by some power competent to administer oaths, faithfully, justly and impartially to decide and true report to make concerning all the matters and things to be submitted to them, and in relation to which they are authorized to inquire, and having viewed the said premises, to estimate and determine what damages have been

sustained by the petitioners by reason of the quarrying, digging, cutting, using and carrying away of the materials aforesaid."

On July 6, 1896, on motion of defendant's counsel a rule was granted on the above-named petitioners to show cause why the petition should not be dismissed. On September 7, 1896, the railroad company, defendant, filed its answer. On October 12, 1896, the court made the above rule absolute.

Other facts appear in the opinion of the court. Plaintiffs appealed.

*Error assigned* was dismissing the petition filed by the appellants.

*C. H. Krumbhaar,* for appellants.—The decree of the learned court below amounts to the sustaining of the demurrer to the petition of the appellants. The record properly discloses no more than a petition by the appellants for the appointment of viewers and a rule to dismiss the same. If it was proper for the court below to dismiss the petition of the appellants for deficiencies appearing on the face thereof, the decree below was right. Otherwise it was clearly wrong. The answer filed by the appellee, and the testimony heard on the return of the rule, cannot be considered in this court, and should not have been in the court below. They are not, properly speaking, a part of the record. They neither add to nor take away from the sufficiency of the petition of the appellants.

The bar set up by the appellee is an alleged former recovery, an assertion that the damages claimed in this proceeding for materials were, or ought to have been, and therefore, in contemplation of law, actually were, included in the judgment rendered for original land damages. Even in an affidavit of defense where res adjudicata, or former recovery, is set up as a defense, the former judgment must be set forth in the affidavit of defense ipsissimis verbis. So has said the Supreme Court of Pennsylvania : Richards v. Bisler, 3 W. N. 485.

The right to have damages assessed for taking materials is specially provided for in the charter of the company. The first section of the company's charter (Act of April 13, 1846, P. L. 312), confers upon the company three distinct powers as follows : (*a*) To "survey, ascertain, locate, fix,. mark and determine"

the route of the road.   (b)  To "·lay down, erect, construct and
establish a railroad" on the route determined.   (c) To "enter
upon any lands adjoining, or in the neighborhood of the said
railroad so to be constructed, and to quarry, dig, cut, take and
carry away therefrom any stone, gravel, sand, earth, wood, or
other suitable material necessary or proper for the construction
of said railroad."   The fourth section of the Act of March 27,
1848, P. L. 273, which act is a supplement to the charter
of the company, also clearly indicates that the taking of ma-
terials is a separate and distinct matter from the taking of
the land for the right of way.

It is incumbent upon the jury to set out in their report the
quantity, quality and value of both the land taken and the
" materials " as separate items : Reitenbaugh v. R. R. Co., 21
Pa. 105 ;·Pa. R. R. v. Bruner, 55 Pa. 318.

The proceeding for the assessment of these damages was
begun by the company, and the jury as a matter of law had no
authority to take into consideration anything except what the
petition described.

.The reason why the report of the jury should be specific and
in the line of the requirements of the act, is stated in Zack v.
Railroad Co., 25 Pa. 394, in these words : " It is important, in
reviewing a cause tried out of the general course of the law, to
see what matters have been inquired of, that it may be known
that the cause has been fully and rightly considered."

The same reasoning is applied in the case of Phila. & Erie R.·
R. v. Cake, 95 Pa. 139.

But aside from this position, which goes to the merits of the
case, the question raised by the company cannot be considered
in this summary manner.

The answer to the present petition sets up, in substance, that
damages have been paid for the injury described in the petition
and the verdict in the former proceeding, its payment and satis-
faction of record are stated as a bar to the right to have a jury
appointed.

All this, however, is matter of defense.   It does not justify
the court in refusing to appoint a jury.   If the company has
already paid the damages now claimed, the jury of view will so
determine, and the jury to try the case on appeal has like au-
thority.   This question is for them, not for the court.   A pre-

cisely similar question has been passed upon in Herner v. R. R. Co., 1 Pa. C. C. 43 ; Updegrove v. R. R. Co., 3 Pa. C. C. 74 ; Fulmer v. R. R. Co., 1 Pa. C. C. 46.

*John J. Pinkerton,* for appellee.—In the trial of this cause before a jury of the common pleas, under the pleadings, every species of demand enters, because the measure of damages is the difference between the market value of the land before and after the taking.

In estimating the damages to a landowner, caused by the construction of a railroad, the rule as to the measure of damages declared by Judge GIBSON in 1821, has, ever since, been recognized and followed: Schuylkill Navigation Company v. Thoburn, 7 S. & R. 411; Railway Co. v. McCloskey, 110 Pa. 436.

The verdict of the jury in this case was for $24,057.67, and it is to be presumed that every form of damage entered into it: Del. & Lack. Co. v. Burson, 61 Pa. 369, 381.

The acceptance by the plaintiffs, of the amount awarded by the verdict of the jury, and satisfaction of the judgment entered thereon, is a bar to any future recovery for damages sustained by reason of the construction and maintenance of this railroad: Hoffeditz v. R. R. Co., 129 Pa. 264.

The claim for damages for materials taken in the construction of the railroad was embraced in the pleadings of the case tried in the common pleas; it might have been recovered in that suit, and, for these reasons, cannot be recovered in a second proceeding: Hess v. Heeble, 6 S. & R. 57.

The question will then be, how far have the jury in the first action tried, professed to pass on the matters put in issue by the pleadings? It is the duty of the jury to find the whole issue, and if they fail in this, their verdict is bad.

The matter I apprehend, depends not on the nature of the demand as it appeared in the evidence, but on the manner in which it was set out in the declaration.

If a verdict, finding several issues, be produced in evidence, the opposite party will not be allowed to show that no evidence was given on one of the issues, and that the finding was indorsed on the postea by mistake, the record being conclusive that the fact was as it is therein stated.

Whether the present cause of action had been inquired into, was not the question, but whether the cause of action contained in the declaration was the same as that laid in the second suit: Carvill v. Garrigues, 5 Pa. 152.

C. H. *Krumbhaar* in reply.— The proceedings being statutory must be strictly followed : Fehr v. Schyl. Nav. Co., 69 Pa. 161; Koch v. Williamsport W. Co., 65 Pa. 288.

The proceedings being special, do not come within the ordinary power of the judge as such, but must be exercised by him under the statute : Lewis v. St. Paul Ry. Co., 58 N. W. Rep. 580; 5 So. Da. Rep. 148.

The proceedings provided by the charter meant a trial by jury. A trial would have given appellants an opportunity to meet defense of former recovery, and not have exposed them to the danger of being cast out of court on ex parte affidavit.

The claim for materials was not embraced in the pleadings.

A plea of "not guilty" in trespass quare clausum fregit raises only the issue declared in the narr. The petition, in the present instance, takes the place of the narr; otherwise, what issue would have been presented? What close broken? The close, of course, described in the petition the right of way sixty-six feet in width. It is the statement in which the whole and only cause of action is embraced. Without it the proceedings would have been a hollow nothingness.

The agreement, in question, to put the cause at issue, was only an agreement that the said cause shall be deemed at issue with like effect as though a declaration in trespass quare clausum fregit had been filed by the plaintiffs, and a plea of not guilty filed thereto by the defendant. The cause referred to was, of course, the cause of action contained in the petition, which was the basis of the proceeding instituted by the appellees, in which they had the unobstructed right and choice to set forth only one or as many other causes of action as fully and completely as possibly could exist.

The judge cannot direct, or the jury inquire into, anything not set forth in a proper petition, consequential damages, growing out of the act set forth, of course being included; but not damages for or growing out of an act not set forth: Lewis v. St. Paul R. Co., 58 N. W. Rep. 580; 5 So. Da. Rep. 148.

Damages arising from the taking of the property described in the bond, and subsequently in the petition, the sixty-six feet wide strip was a question to be inquired into.

A close examination of the authorities cited by appellee more strongly establishes the contention of appellant:

1. That the bond fixed the date of appropriation of the right of way only.

2. That the charter establishes two separate causes of action.

3. That nothing within the view of this court shows more than one cause of action to have been declared upon.

4. That the taking of material is a separate and distinct act from the appropriation for a right of way, done at a different time, and requiring compensation or security.

5. That the plea of "not guilty" raised only the issue set forth in the petition filed March 26, 1895, i. e., right of way.

6. That the damages for taking of said material could not be included in consequential damages resulting from the taking of the strip of land for right of way.

There is no record before this court, or in fact before the lower court, in any of the proceedings heretofore had, which will show that the materials have ever been included in any issue, or paid for, or security given therefor; but, on the contrary, could they be examined, they would show that materials had been expressly excluded.

Hess v. Heeble, 6 S. & R. 57, only confirms appellants' right to offer parol testimony to explain record under the circumstances of the present case, and to disprove former recovery. It differs from the present case in that plaintiff there counted in solido, here appellants have not merged their two causes of action.

The railroad company had not done all incumbent on it under charter (i. e., entered bond or condemned the materials taken), to place it in position to invoke proceedings thereunder, —consequently could not have raised the issue. Hess v. Heeble explained; Carmony v. Hoober, 5 Pa. 307.

OPINION BY BEAVER, J., January 18, 1898:

The appellants, in July, 1896, presented to the court of common pleas of Chester county a petition setting forth that "The Pennsylvania Railroad heretofore surveyed, laid out and con-

structed a branch line of railroad through and upon the lands of your petitioners in the township of Tredyffrin, in said county, and in so doing said company took, used and occupied a strip of land containing about 7 $\frac{315}{1000}$ acres, more or less, which strip of land is particularly described by metes and bounds in a certain petition filed by said company in this court on March 26, 1895, wherein said company requested the appointment of five persons as viewers to assess the damages done to the petitioners by reason of the entering upon and occupation of said strip of land." It was further alleged in said petition: "That said company, in the construction of said branch line, entered upon the land of the petitioners adjoining and in the neighborhood of the strip above referred to, and quarried, dug, took and carried away therefrom large quantities of stone, gravel, clay, sand, earth and other suitable materials necessary and proper for the construction and maintenance of said line," and asking that the court appoint viewers " to estimate and determine what damages have been sustained by petitioners, by reason of the quarrying, digging, cutting, using and carrying away of the materials aforesaid." The reference in the petition to the former petition presented by the railroad company for viewers naturally attracted the attention of the court to which the petition was presented, an inspection of which discloses the fact that " The said railroad company, in pursuance of the authority vested in them by the act incorporating the said company and by any and all acts of the General Assembly of the Commonwealth of Pennsylvania enabling them, desired to enter upon and occupy for the purpose of constructing thereon the said branch railroad, with the necessary slopes, embankments, bridges, turnouts, sidings, depots or stations, warehouses, offices, engine and water stations or other buildings or appurtenances, which may be necessary or convenient for the same, the following described piece or parcel of land, to wit:" (after which follows a description by metes and bounds of the land to be entered upon, containing seven and $\frac{315}{1000}$ acres, more or less), and praying the court to appoint viewers " faithfully, justly and impartially to decide and true report to make concerning all the matters and things to be submitted to them, and in relation to which they are authorized to inquire and, having viewed the said premises, to estimate and determine the quantity, quality

and value of the said land so taken or occupied, and what amount of damages have been sustained or may be sustained and to whom payable."

Viewers were appointed, in pursuance of the said petition, four of whom on the 11th day of June, 1895, made a report filed in the court below September 7, 1896, in which they estimated the value of the land taken, as the same appears by the plot or draft of the route of said railroad thereto attached, at the sum of $5,133, and the damages done to the property at the sum of $9,867.

An appeal from the award of viewers thus made was taken by the appellants and, upon the trial of that appeal in the court below, in which it was agreed " that the foregoing cause shall be deemed at issue with like effect as though a declaration in trespass quare clausum fregit had been filed by the plaintiff and a plea of not guilty filed thereto by the defendant," a verdict was rendered by the jury in favor of the plaintiffs, the appellants in this case, and against the defendant, the appellee, for the sum of $24,057.67, damages, and six cents costs, which judgment was satisfied by the plaintiffs' attorney April 27, 1896.   All these facts appear as matters of record in the proceedings arising under the petition filed by the defendant, as alluded to by the appellants in their petition for the appointment of viewers, and were fully set out in an answer to the petition made by the railroad company, duly sworn to, in response to a rule granted by the court upon the petitioners to show cause why the petition should not be dismissed.   Testimony was also taken upon that rule, at the taking of which the appellants were represented by counsel, to show that in March, 1895 (the date at which the original petition of the railroad company had been presented), " all the dirt had been taken and materials used and everything needed in the construction of the road."   The question was, therefore, fully and fairly raised as to whether or not the petitioners had a right to the appointment of viewers to assess damages for taking dirt and other materials used in the construction of the railroad passing through their property outside the limit of the right of way, after having recovered a verdict for damages under the proceedings had in pursuance of the petition presented by the railroad company in March, 1895.

It would seem, from the report of Robinson v. Railroad, 161 Pa. 561, that the railroad company had originally entered upon and taken a strip of land through the appellants' property one hundred and forty feet in width instead of the sixty-six feet expressly allowed by its charter, which is contained in the Act of 13th of April, 1846, P. L. 312, as amended by the Act of 27th of March, 1848, P. L. 273. In an ejectment brought by the plaintiffs against the railroad, they were allowed to recover all of the land outside a strip sixty-six feet wide, to which the railroad was limited for right of way. The railroad was allowed to amend its petition descriptive of the land taken by it, so as to limit it to the sixty-six feet in width, and it was after this amendment that the appeal from the award of viewers was tried and the verdict for damages rendered.

It is claimed by the appellants that the charter of the railroad company, as contained in the acts of 1846 and 1848, supra, is to be strictly construed against it, and this is undoubtedly true, and that by a strict construction of its charter, they are to be allowed separate sets of viewers to assess the value of the land taken for the purposes of the railroad and for the materials which it may enter upon, use or take away in pursuance of the authority given it by its charter. It is true, that in the fourth section of the act of 1848, supra, in which the mode in which damages are to be assessed is pointed out, authority is given to the viewers to assess the damages for lands or materials which the company may enter upon, use or take away, in pursuance of the authority given to it by the act, and the disjunctive conjunction " or " is used throughout the entire section in speaking of lands or materials, the duty of the viewers being prescribed in the following language : " And, having viewed the premises, they shall estimate and determine the quantity, quality and value of said lands so taken or occupied, or to be taken and occupied, or the materials so used or taken away, or to be used or taken away, as the case may be ; and, having due regard to and making just allowance for the advantages which may have resulted or which may seem likely to result to the owner or owners of said lands or materials, in consequence of the opening or making of said railroad or the construction of works connected therewith ; and, after having made a fair and just comparison of said advantages or disadvantages, they shall estimate

and determine whether any, and if any, what amount of damages have been sustained or may be sustained, and to whom payable, and make report thereof to the court."

In pursuance of the powers thus conferred upon viewers, the universal practice in Pennsylvania, so far as we know,—a practice based upon the well settled law,—has been to assess all the damages done or likely to be done to the premises through which the railroad passes, including the use and occupation of the ground occupied, the materials taken from the land adjoining the limits of the right of way, increased danger by fire, inconvenience from noise, additional burden imposed upon the land by reason of fencing, inconvenience of farming parts of lands separated from each other by the railroad, increased difficulty in reaching barns and other buildings, in the ordinary use of the property, damages likely to result from drainage and other causes arising from the construction of the road and other similar disadvantages. These and such as these have always been held as proper subjects of inquiry by viewers and, on appeal from their award, by juries, in estimating the difference between the value of the land as it was before the railroad was constructed and its value after the construction.

There has been no deviation from the general rule in regard to the measure of damages in cases of the character of that tried in the court below, in which the appellants were plaintiffs and the railroad company defendant, since the case of the Schuylkill Navigation Co. v. Thoburn, 7 S. & R. 411, which, as we have lately remarked in another connection, was a leading case, down to Struthers v. Phila. & L. R. R. Co., 174 Pa. 291, in which latter case Mr. Justice WILLIAMS lays down the rule as follows: "The true measure of damages has been held, in a long and unbroken line of cases, to be the difference in the market or selling value of the property entered, before the entry was made, and afterwards," (referring to a number of well known cases) "but the jury have no right to allow damages for distinct items, whether estimated by experts or other witnesses, and reach the amount of their verdict in that manner. Their duty is simply to ascertain the loss in the selling value of the property entered, due to the fact of the taking by eminent domain. This loss stands for the measure of damages, because it embraces the effect of all the elements of depreciation taken together."

If the railroad company went beyond the bounds of its right of way and took materials for the construction of its embankment, that was an element of depreciation which could have been, should have been and doubtless was taken into consideration, by both the viewers and the jury, in reaching a conclusion as to the amount of damages suffered by the appellants in the construction of the railroad. In no other way could the difference in the market or selling value of the property entered upon, before the entry was made and afterward, be ascertained. If the appellants had been the owners of property adjoining that of another person, through whose lands the railroad was located and built, and the railroad company had entered upon their land for the purpose of taking materials to be used in the construction of the road, they would undoubtedly have been entitled to the appointment of viewers for the purpose of assessing the damages so done to their property; but, by their own showing, as is manifest from their petition and the reference therein to the former proceedings, the damages for the ascertainment and determination of which they asked viewers to be appointed, must have been passed upon in the proceedings had in pursuance of that petition, otherwise we would be obliged to hold that counsel for plaintiff and defendant, viewers, court and jury, all failed in the discharge of a manifest duty.

It is contended by the appellants that the only question for the court below, and the only one which is legitimately before us, is the sufficiency and regularity of the petition presented by them asking for the appointment of viewers; but, as hereinbefore intimated, they have themselves introduced the record of the former proceedings by reciting the petition of the railroad company for the appointment of viewers. They were represented in the proceedings which followed the granting of the rule to show cause why the petition should not be dismissed. They participated in the cross-examination of the witness whose testimony was taken in the proceedings had under that rule. We can see no reason why the court should not determine the question as to whether or not viewers should be appointed to assess the damages, as well at the time when the petition was presented as when, after an appeal from the award of viewers, in a trial before a jury, an effort was made to show the damages resulting from the taking of the material complained of, which

could not have been allowed; or when, after the plaintiffs had given in evidence testimony relating to the damages, the fact of a former recovery had been shown, in which event the court would, of course, have instructed the jury that no recovery could be had.

Although the question was not distinctly raised in the court below, there is grave doubt as to the sufficiency of the petition presented by the appellants. It shows that the railroad company had "laid out and constructed a branch line of railroad through and upon the lands of your petitioners in the township of Tredyffrin" and that "in the construction of said branch line, entered upon the land of the petitioners adjoining and in the neighborhood of the strip above referred to and quarried, dug," etc. There is no allegation that the materials taken for the construction of the road had been taken from an adjoining tract. It must be presumed, therefore, that they were taken from the same tract upon which the road had been laid out and constructed. How could the viewers, therefore, if appointed, have complied with the provisions of the fourth section of the act of March 27, 1848, supra, in determining the damages to be awarded to the appellants, after making just allowances for the advantages which may have resulted or which may seem likely to result to the owner or owners of said lands or materials in consequence of the opening or making of said railroad or the construction of works connected therewith? The petition stops short of what is required under the facts of the case and, if viewers were to be appointed in such a case, we can see no reason why another set of viewers might not be appointed to determine what damages had been suffered by the appellants, by reason of the increased burden of fencing, or by reason of the inconvenience from noise and vibration of the plaintiff's residence, by the running of trains, and every other element which enters into the determination of the question of damages, as regulated by the well settled principles as hereinbefore referred to. How could the viewers in any such case consider the advantages accruing to the petitioner by reason of the construction of the railroad, in estimating the damages? It is not necessary for us to pass upon this question, however, inasmuch as it is not presented for our consideration.

There is nothing in the objection made by the appellants that

they were limited in the trial of the appeal from the award of the original viewers by the bond filed by the defendants in that suit. The condition of that bond was " to pay or cause to be paid unto the plaintiffs, or to their executors, administrators or assigns, such sum of money as they shall be entitled to receive for damages, in consequence of the taking and keeping of said land for the purposes aforesaid, said payment to be made after the amount of said damages shall be agreed upon by the parties or assessed in the manner prescribed by the laws in such case made and provided." If this bond had not been sufficiently broad to cover all the damages suffered or to be suffered by the plaintiffs, they could have required it to be enlarged or amended at the time by an application to the court below, but we think it was abundantly sufficient in every respect to cover all the damages which the plaintiffs suffered or were likely to suffer, in consequence of the taking of their land and the construction of the road, as provided in ordinary cases.

It is incumbent upon courts to prevent litigation as far as possible, consistently with the rights of all parties in interest. The court of common pleas in this case had complete jurisdiction of the subject of controversy. The single question in dispute was as fairly and fully raised as it could have been, at any subsequent stage of the proceedings usually incident to the ascertainment and determination of damages in a like case. We see no impropriety whatever in the disposition made of the case, at the time and under the circumstances, when disposed of.

The decree of the court below is affirmed and the appeal dismissed, at the costs of the appellant.