## Pennsylvania Railroad Company *v.* Braddock Borough, Appellant.

*Railroads—Right of way—Width—Deep cuts—Act of April 13, 1846, P. L. 312.*

Where a railroad company is authorized by its charter to acquire land over which to construct its railroad, not, however, "to exceed four rods in width," "except in the neighborhood of deep cuttings or high embankments," the words "deep cuttings" mean such cuts in their entirety as may be reasonably necessary to enable the company to use for track purposes the entire width of an authorized sixty-six foot right of way. In such a case the legislature did not intend that one part of a cut should be treated as "deep" and another as "shallow", and thus cause the line of the railroad's property to be serrated and indented and dangerous in the operation of trains.

Argued Oct. 27, 1911. Appeal, No. 177, Oct. T., 1911, by defendant from decree of C. P. No. 2, Allegheny Co., Jan. T., 1911, No. 90, on bill in equity in case of Pennsylvania Railroad Company v. Braddock Borough. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction

FRAZER, P. J., filed the following opinion:

The purpose of this bill was to enjoin defendant borough from entering upon land claimed to be part of plaintiff's right-of-way and constructing thereon a concrete wall. From the bill, answer and proof we find the following facts:

### FINDINGS OF FACT.

First. Plaintiff is a corporation organized and existing under and by virtue of a special Act of Assembly of the Commonwealth, entitled "An Act to incorporate the Pennsylvania Railroad Company, approved April 13th, 1846, P. L. 312," and the supplements thereto

and amendatory thereof, with the following powers, inter alia:

"Section 11. That the president and directors of said company shall have power and authority by themselves, their engineers, superintendents, agents, artisans, and workmen, to survey, ascertain, locate, fix, mark and determine such route for a railroad as they may deem expedient, not however, passing through any burying ground, or place of public worship, or any dwelling house, without the consent of the owner or owners thereof; and not except in the neighborhood of deep cuttings or high embankments, or places selected for sidings, turn-outs, depots, engine or water stations, to exceed four rods in width; and thereon to lay down, erect, construct and establish a railroad, with one or more tracks, with such branches or lateral roads as are hereinafter mentioned; and with such bridges, viaducts, turn-outs, sidings or other devises, as they may deem necessary or useful;"

"And in like manner by themselves, or other persons by them appointed or employed, as aforesaid, to enter into and upon, and occupy all land on which the said railroad or depots, warehouses, offices, toll houses, engine and water stations, or other buildings or appurtenances hereinafter mentioned, may be located, or which may be necessary or convenient for the erection of the same, or for any other purpose necessary or useful in the construction, maintenance or repairs of said railroad; and therein and thereon to dig, excavate and embank, make, grade, lay down, and construct the same."

"Section 2. That said Company shall not purchase or hold any real estate, except such as may be necessary or convenient for the making and constructing of said Railroad, or for the furnishing of materials therefor, and for the accommodation of depots, offices, warehouses, machine shops, toll houses, engine and water stations, and other appropriate appurtenances, and for the persons and things employed or used in or about the same."

Second. Defendant is a municipal corporation, organized June 8th, 1867, under the laws of this Commonwealth, and located in the County of Allegheny, the southern line of plaintiff's railroad being the Northern line of the Borough.

Third. By virtue of a grant from the Merchants and Manufacturers Bank of Pittsburgh, dated June 8th, 1847, and recorded in the Recorder's office of Allegheny County, Deed Book Vol. 78, page 378, plaintiff acquired "a strip of land four rods in width, and such additional width as may be required and necessary in the construction and use of said railroad at deep cuttings and embankments," the strip of land referred to being located a short distance west of the present station at Braddock, and includes the land in controversy in this proceeding.

Fourth. By a Plan of lots laid out by the Masonic Bank of Pittsburgh, recorded December 27th, 1882, in Plan Book Vol. 6, page 300, a street forty feet in width and extending from Margaretta Street in the Borough of Braddock to the line of the Pennsylvania Railroad, known as Pitcairn Street, was laid out and dedicated to public use, and has since that time been used by the public. The land embraced in this Plan was part of the land owned by the Merchants and Manufacturers Bank at the time of its grant to plaintiff and referred to in the previous finding of facts.

Fifth. In the Fall of 1881 the plaintiff (having theretofore constructed over the land acquired by the grant of 1847 two tracks) permanently located its road over its land by grading the roadbed to four rods in width, one-half thereof on each side of the center line, with cuttings and fills to support the roadbed, and laid down thereon two more tracks, making four tracks in all upon its right-of-way, and put all of the tracks in use prior to May, 1882.

Sixth. The surface of Pitcairn Street where it abuts on the line of the plaintiff's property is from three feet

to seven feet above the grade of the roadbed and tracks of plaintiff, and for the purpose of supporting the bed of the street at its established grade, the street having lately, by ordinance duly adopted, been improved by grading, paving and curbing, defendant on or about October 17th, 1910, began the construction of a concrete wall at the Northerly end of Pitcairn Street and about four inches South of the South 33 foot line of the right-of-way of plaintiff Company, which when completed will be approximately 35 feet long, five and a half feet above the ground, 18 inches wide at the top with an increase of 6 inches for every two feet of height, to a thickness of 2½ feet at the bottom. The construction of the wall in question, as at present located, would take the place of the slope existing at Pitcairn Street since the Spring of the year 1882.

Seventh. In the construction of plaintiff's railroad at and East of Pitcairn Street a cut was made necessary by a rise in the ground at that point. The cut begins at zero slightly West of Pitcairn Street and becomes deeper as it progresses East toward Parker Avenue, its deepest point being midway between Parker Avenue and Pitcairn Street. At the West side of Pitcairn Street the cut from the surface of the street to the subgrade of the railroad is 4.09 feet, and to the top of the outer rail of the South track 3.33 feet. At the center line of the street the cut is 5.38 feet to the sub-grade and 3.06 feet to the top of the outer rail, and at the East curb line of the street the cut is 7.06 feet to sub-grade and 5.82 feet to the top of the outer rail. The extent of the cut at its highest point midway between Pitcairn Street and Parker Avenue does not appear by the testimony except that the photograph shows it to be in the neighborhood of twelve feet, the gradient being one and one-half to one, and the toe of the cutting being at grade at the Southerly line of the four rods width, the width of the slope is additional to the four rods width.

Eighth. The cut at Pitcairn Street is reasonably necessary in accordance with good engineering to enable plaintiff to use and occupy its full width of 66 feet for railroad purposes. No objection was made to the cut by any person until October 17th, 1910, when defendant Borough began the construction of the wall now complained of.

Ninth. Plaintiff Company has now four tracks constructed and in use at Pitcairn Street, and five tracks both East and West of that point. To extend the fifth track in front of Pitcairn Street and connect the ends of the tracks now laid, will require the construction of 6,379 feet of new track. This the testimony shows plaintiff proposes doing in the near future, and if constructed the South rail of the fifth track will be located about six feet from the proposed wall if constructed.

Tenth. If the plaintiff has the right under its charter to take additional land beyond four rods for the cut at Pitcairn Street, and such additional land was conveyed by its grant from the Merchants and Manufacturers Bank of Pittsburgh, then the proposed wall of the Borough at the end of Pitcairn Street as now located is upon plaintiff's property. If plaintiff is confined at that point to a strip of land four rods wide by its grant, and no more, then the location of the proposed wall is outside of plaintiff's land.

### CONCLUSIONS OF LAW.

First. The question involved in this proceeding is confined within narrow limits. Plaintiff by its charter is authorized to acquire land over which to construct its railroad, not however, "to exceed four rods in width," "except in the neighborhood of deep cuttings or high embankments." Pursuant to this authority it acquired from the Merchants & Manufacturers Bank of Pittsburgh, for the consideration "of the advantages which will result to said corporation from the location and construction of the Pennsylvania Rail-

road, and for the further consideration of the sum of one dollar, * * * a strip of land four rods in width, and such additional width as may be required and necessary in the construction and use of said road at deep cuttings and embankments, one-half thereof on each side of the center line of said railroad, extending in length as far as said railroad may pass over the lands of said Corporation." The land thus acquired lies a short distance West of plaintiff's station house at Braddock, and now adjoins the Borough of Braddock on the North. In constructing its railroad over this strip of land, to afford plaintiff the use of its full four rods of land for track purposes it became necessary to make a cut at one point which required a slope at a gradient of one and one-half to one, and ranging in heighth from zero to possibly twelve feet. The North terminus of Pitcairn Street is near the West end of the cut, and the streets on an average of approximately six feet above plaintiff's graded roadbed.

If plaintiff's line extends to the outer edge or top of the slope of the cut then the preliminary injunction should be made permanent; if only to the South 33-foot line it should be dissolved. Plaintiff's charter authorizes it to hold land for track purposes to the extent of 66 feet in width. If such was not the legislative intention there was no necessity for the reference in the charter to "deep cuttings or high embankments," and that such was the understanding of both plaintiff and the Merchants & Manufacturers Bank is apparent from the language of the grant, which not only conveys the 66-foot strip but also "such additional width as may be required and necessary in the construction and use of said road at deep cuttings and embankments." If the cut beginning immediately West of Pitcairn Street and extending Eastwardly is considered a "deep cut" plaintiff's line extends to the top of the slope. In determining that question we are not confined to the immediate terminus of Pitcairn Street,

but must consider the cut as a whole. If no greater at any point than at the West end of the street we should probably say it was not a "deep cut," but regarding it as a whole and taking into consideration the fact that it increases gradually as it extends Easterly until it reaches a heighth of at least twelve feet, we think it should, under the circumstances, be considered a "deep cut," and carry plaintiff's line to the top of the slope. The Legislature certainly never intended that one part of a cut should be treated as "deep" and another as "shallow," and thus cause the line of a railroad's property to be serrated and indented, and dangerous in the operation of trains, which would be the result if defendant's contention that the cut at Pitcairn Street is not a "deep cut" is upheld. The term "deep cuts" as used in plaintiff's charter in our opinion is a relative term and means such cuts in their entirety as may be reasonably necessary to enable plaintiff to use for track purposes the entire width of a sixty-six foot right-of-way. That conclusion is strengthened by the fact that provision is also made for acquiring land for depots and other purposes. It is not contended that the slope as it now exists at Pitcairn Street is not in accordance with good engineering.

The cases cited by defendant do not rule the question raised here. In those cases the taking was under the corporations' right of eminent domain; here plaintiff purchased not only a strip of land sixty-six feet in width, but such additional land as might be necessary in the construction of its road at deep cuttings and embankments. And this it had a right to do, as its charter expressly confers upon it the power to purchase or hold such real estate as may be necessary or convenient for making and constructing its railroad. If the cut at what is now the terminus of Pitcairn Street was either necessary or convenient to enable plaintiff to use its full right-of-way for track purposes, and the uncontradicted testimony of its engineers shows that it is,

then plaintiff had a right to purchase the additional land, and by the purchase acquired a good title, not only to the 66-foot right-of-way, but also to the top of the slope of the cut. The fact that the Plan of the Masonic Bank shows Pitcairn Street laid out to the 66-foot right-of-way of plaintiff cannot affect plaintiff's title, as the property was acquired by the Bank and the plan laid out and recorded long after plaintiff secured and located its right-of-way.

Second. The contention of defendant that the bill must be dismissed because plaintiff failed to show action on the part of its Board of Directors locating its road through this property cannot be sustained. We think such corporate action can be assumed, inasmuch as the testimony shows that the first tracks were laid upon the land acquired from the Merchants and Manufacturers Bank fully sixty years ago, and that the South line of the right-of-way is fixed by measuring from the center line of the tracks as originally located.

Third. In accordance with the foreging findings of fact and conclusions of law, we are of opinion that the plaintiff's right-of-way extends to the top of the slope at Pitcairn Street in defendant Borough, and that defendant has no right to construct at that point the proposed retaining wall North of the top of the slope as ascertained upon a gradient of one and one-half to one.

Let a decree be drawn making permanent the preliminary injunction heretofore granted. The costs of these proceedings to be paid by defendant.

*Error assigned* was decree awarding an injunction.

*Jos. F. Mayhugh,* for appellant. The charter must be strictly construed against the company: Curtis v. R. R. Co., 34 Pa. C. C. R. 52.

There was no necessity for the attempted taking in this case beyond the sixty-six foot line or the statutory

right of.way of the plaintiff.   This is a question of fact
for the court:   Robinson v. R. R. Co., 161 Pa. 561;
Curtis v. Erie R. R. Co., 34 Pa. C. C. R. 52.

So far as appellant's counsel has been able to dis-
cover there is no decision of this court upon what con-
stitutes "a deep cut."   The matter, however, has been
passed upon in the case of Curtis v. Columbus and Erie
Railroad Co., 34 Pa. C. C. R. 52.

*James R. Miller,* of *Patterson, Sterrett & Acheson,*
for appellee.   The necessity of the cut was within the
discretion of the directors:   Anspach v. R. R. Co., 5
Phila. 491; Lodge v. R. R. Co., 8 Phila. 345.

"Deep" is a word of relative meaning.   One hole is
deep as compared to another which is shallow.   It
seems to us that the legislature and the grantor meant
to give the railroad the right to take land for cuts to
support the four rods of roadbed whenever the cuts
were physically or topographically necessary and not
the result of the mere leveling off of small inequali-
ties.

The fact that the cut in question was constructed in
1881 openly on the grounds and was visible to every-
body, and has remained until to-day unquestioned by
the Appellee's grantor, or its successors in title, amounts
to an interpretation of the meaning of "deep" and is
absolutely conclusive.

Drummond v. Attorney General, 2 H. L. Cas. 837;
Ins. Co. v. Dutcher, 95 U. S. 269; McMillin v. Titus,
222 Pa. 500; People's Nat. Gas. Co. v. Braddock Wire
Co. 155 Pa. 22; Phila. & Reading R. R. Co. v. Obert,
109 Pa. 193; Mt. Pleasant Coal Co. v. R. R. Co., 200
Pa. 434; West Chester & Phila. R. R. Co. v. Goddard,
10 Sadler 53.

PER CURIAM, January 2, 1912:

The decree appealed from is affirmed on the opinion
of the learned President Judge of the Common Pleas.