# Foley et al., Appellants, *v.* Beech Creek Extension R. R. Co.

*Railroads—Eminent domain—Statutes—Construction of grant of power.*

1. Enabling acts delegating to a railroad company the power of eminent domain are to be strictly construed.

2. Such power will not be presumed to exist unless by express legislative grant, and the purpose for which granted should be of a public or quasi-public nature.

*Railroads—Eminent domain—Condemnation of right-of-way— Corporate action—Act of February 19, 1849, P. L. 79—Resolution of board—Adoption of line of railroad—Presumption—Center line —Width—Cuts and fills—Necessity—Petition and bond—Amendment.*

3. The words "the president and directors of such company" shall have authority to construct a railroad, contemplate corporate action by the adoption of a resolution, and do not mean the president alone or the directors individually shall act.

4. A resolution adopting a line of railroad marked on the ground and indicating the route between terminals named, without more, not only fixes the centre line, but, unless otherwise expressed, operates as an appropriation of the land permitted by the act on which to construct the railroad, and fixes a servitude on such land.

5. If no width is designated in the resolution, the full width permitted by the act will be presumed to have been taken, that is, sixty feet for roadbed, with such additional ground as may be necessary for deep cuts, fills, stations, etc.

6. Establishing by metes and bounds the necessary width on the various tracts over which the road passes is contemplated by the act as being an engineering detail, as to which preliminary corporate action is unnecessary.

7. If the owner deems that more land is to be taken than is necessary, he may protest when the petition for the approval of the bond is filed, but lack of corporate action as to each piece of land, will not stop the proceedings, providing the company justifies the taking of additional land over sixty feet to be within the act by showing the necessity therefor.

8. Where a road is to be built through a mountainous country, along precipitous hillsides, the petition and bond should set forth

the extra width required for cuts and fills, but an omission to insert this will not retard or nullify the proceedings.

9. In such case, the court will permit an amendment so that the land taken conforms to the widths necessary.

10. It is not necessary to specify the number of tracks it is proposed to construct, so as to bring the cuts and fills within the sixty feet, inasmuch as the company is entitled to that width in addition to land for cuts and fills.

*Railroads—Eminent domain—Relocation of highway—Act of February 19, 1849, P. L. 79—"Established roads"—Dedication—Inclusion of land for relocation of highway in condemnation proceedings — Amendment — Due process of law — Common pleas and quarter sessions.*

11. The legislature has power to permit a railroad company to occupy the bed of a highway, and to condemn land to relocate a highway thus taken.

12. The condemnation of land for the right-of-way and contiguous land for the relocation of a highway, may be included in the same proceeding.

13. In such case, it is not necessary to proceed in the quarter sessions to vacate and supply the highway.

14. The condemnation proceeding in the common pleas conveying the land for the relocation of the highway is due process of law.

15. The grant of a right to a railroad company to relocate a highway in the Act of February 19, 1849, sec. 13, P. L. 79, carries with it the right to condemn land for that purpose under the procedure outlined in section 10 of the act; such procedure is conclusive upon the property owners, if the land taken is not excessive.

16. It is not necessary to outline a particular procedure in the statute authorizing it, if adequate reference is made as to where it may be found.

17. The granting of a power to accomplish a particular enterprise carries with it the authority to do all that is necessary to that end.

18. The question as to what is the "most favorable location" for the relocation of a highway within the meaning of the Act of 1849, is a public question, which is primarily determined by the railroad company in the first instance; such question cannot be raised by the landowner in the condemnation proceedings.

19. If the condemnation proceedings do not show the centre line of the railroad or the quantity of land to be taken, such defect must be cured by amendment so that the township authorities may know what land they may use for highway purposes, also, if the

strip is vacated as a highway, that it may be known to whom the title reverts.

20. Whether roads laid out and dedicated to public use, and used by the public, are "established roads or way" within the meaning of the Act of 1849, is a question which cannot be raised in condemnation proceedings under the act.

Argued April 14, 1925. Appeal, No. 188, Jan. T., 1925, by plaintiffs, from decree of C. P. Clinton Co., Oct. T., 1918, No. 2, dismissing bill in equity, in case of Jeremiah Foley et al. v. Beech Creek Extension Railroad Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction to restrain taking of land for right-of-way. Before PRATHER, P. J., specially presiding.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting record.

*J. A. Noecker,* with him *W. E. Shaffer, B. Frank Geary* and *W. K. Swetland,* for appellant.—Appellee cannot take land in excess of sixty feet in width, without affirmative proof of corporate action appropriating additional land in the neighborhod of deep cuts and high embankments, and without setting forth in its condemnation proceedings the purpose for which the additional land, outside of sixty feet in width, is to be used, and without showing necessity for a roadbed at a grade sixty feet in width, for the operation of its proposed railroad: Packer v. R. R., 19 Pa. 211; Com. v. R. R., 27 Pa. 339; Lance's App., 55 Pa. 16; Phillips v. Dunkirk R. R., 78 Pa. 177; Penna. R. R. Co.'s App., 93 Pa. 150; Stewart's App., 56 Pa. 413; Darlington v. U. S., 82 Pa. 382; Boalsburg v. Water Co., 240 Pa. 198; Robinson v. R. R., 161 Pa. 561; Pittsburgh Nat. Bank of Commerce v. Shoenberger, 111 Pa. 95; Phila., Harrisburg, etc., R. R

v. Gorgas, 14 Pa. Dist. R. 824; Wilson v. R. R., 34 Pa. Superior Ct. 575; York Ry. v. Stiles, 19 Pa. Dist. R. 99.

Appellee cannot condemn land in excess of sixty feet in width for relocation of a highway, and in the same proceeding appropriate land for the location and construction of its railroad, the condemnation proceedings showing no location for such proposed change of highway, nor showing what specific lands are appropriated for railroad purposes, and what for highway purposes: Dilts v. R. R., 222 Pa. 516; Phillips v. R. R., 78 Pa. 177; Woodring v. Twp., 28 Pa. 355; Sterling's App., 111 Pa. 35; Penna. R. R. Co.'s App., 128 Pa. 509.

Roads and streets laid out and dedicated to public use, and used by the public, are established roads or ways, within the meaning of section 12 of the Act of 1849, P. L. 83: Chester v. R. R., 140 Pa. 275; B. & O. R. R. v. P. S. C., 80 Pa. Superior Ct. 443; Reily v. Penna. Co., 32 Pa. Superior Ct. 579.

*Henry Hipple,* with him *Seth T. McCormick, Jr.,* for appellee.—The adoption and location of its route by appellee was an act of appropriation and fastens a servitude on the property affected thereby: Templeton v. Coal Co., 50 Pa. Superior Ct. 341.

The act means that the 60-foot strip shall constitute the roadbed, shall be land to be used for track purposes, and does not include any land to be used for slopes and fills. If such was not the legislative intention, there was no necessity for the reference in the Act of 1849 to deep cuts or high embankments: Penna. R. R. v. Boro., 234 Pa. 312; P. & R. Ry. v. Obert, 109 Pa. 193; Williams v. R. R., 255 Pa. 133.

The condemnation petitions and bonds accompanying them are sufficient: Pittsburgh, etc., Ry. Co. v. Peet, 152 Pa. 488; Rogers v. Ry., 255 Pa. 462; Zahn v. R. R., 184 Pa. 66; Columbus, etc., R. R. v. Baker, 34 Pa. C. C. R. 28; Jones v. R. R., 144 Pa. 629.

The very act of location or adoption of a route for a railroad in which route is included a public highway, or a portion thereof, is a taking of such highway for railroad purposes, and there at once arises the duty of the company to relocate the road, and, if necessary, to condemn land for such purpose: Danville, etc., R. R. v. Com., 73 Pa. 29; Linton v. Bridge Co., 1 Grant 414; Clarke v. Bridge Co., 41 Pa. 147; Pitts. & C. R. R. v. Speer, 56 Pa. 325, 335; Penna. R. R. Co.'s App., 128 Pa. 509.

There may be included in one condemnation proceeding a taking for a right-of-way and also for the relocation of a highway: Pitznogle v. R. R., 119 Md. 673; Ferguson v. R. R., 253 Pa. 581.

The rights of lot owners, such as appellants, the status of streets such as those named upon the Foley Plan and the rights of a railroad company relative thereto, are decided and ruled adversely to appellants in Chambersburg Shoe Mfg. Co. v. R. R., 240 Pa. 519.

OPINION BY MR. JUSTICE KEPHART, May 18, 1925:

Appellee, under its charter powers, pursuant to the Act of February 19, 1849, P. L. 79, 83, located a railroad in Clinton County. It passed over lands of appellants. Denying the company's authority to take the land, proceedings were instituted under the Act of June 19, 1871, P. L. 1360, to restrain the taking. The court below on final hearing denied the applications and dismissed the bills. Appellants admit the company, by resolution duly adopted, located the center line of the proposed road and marked it on the ground. They also concede this action gave the company the right to take appellants' land to the extent of sixty feet in width. They further admit the condemnation proceedings and the steps leading thereto are regular, but they urge these proceedings are ineffective as to any land in excess of sixty feet. This position is based on the assertion that the jurisdictional facts necessary to sustain a taking of land over sixty feet are

not averred in the petition or accompanying bond. Nor, as to this excess land, was there any appropriating resolution adopted by the board of directors.

The questions before us are: (1st) whether it is necessary for a railroad company, having duly adopted its route, to set forth by formal resolution the courses and distances of the land appropriated where it exceeds sixty feet in width; (2d) must the condemnation petition in all such cases set forth the extraordinary purposes for which the excess land is to be used; (3d) must the proceedings show a necessity for a roadbed "at grade sixty feet in width for the operation of its proposed railroad?"

Drafts were attached to the petitions or bonds showing land much wider than sixty feet. The owners, under the Act of June 19, 1871, P. L. 1360, section 27, could challenge and inquire into the necessity for the taking: Gring v. Sinking Spring Water Co., 270 Pa. 232, 244. This was the practice here invoked.

Section 10 of the Act of February 19, 1849, P. L. 79, 83, provides "that the president and directors......shall have power and authority by themselves, *their engineers,* ......to survey......fix, mark and determine such route for a railroad as they may deem expedient......, and not, except in the neighborhood of deep cuttings, or high embankments......to exceed sixty feet in width, and thereon to......construct and establish a railroad, with one or more tracks." The above is the effective part of the section as it relates to the present controversy; it is the basis of appellee's power to condemn.

As has been frequently expressed, the enabling acts delegating the power or authority to exercise the right of eminent domain are to be strictly construed: Lance's App., 55 Pa. 16, 26. Such power will not be presumed to exist unless by express legislative grant (Phillips v. Dunkirk, Warren & Pittsburgh R. R. Co., 78 Pa. 177, 181), and the purposes for which granted should be of a public or quasi-public nature.

We long ago held that under this act railroads could be laid out, and property taken under the right of eminent domain; companies acting thereunder possessed all the faculties necessary to the successful accomplishment of that purpose, always within the limits of the act. "The president and directors of such company" shall have authority. The use of this language clearly contemplates corporate action, which means of course the adoption of a resolution. It does not mean the president alone or the directors individually, but contemplates corporate action: Boalsburg Water Co. v. State College Water Co., 240 Pa. 198, 209; Palmer Water Co. v. Lehighton Water Supply Co., 280 Pa. 492, 501. Such resolution was passed. It adopted a line of railroad marked on the ground, and indicated the route appellee proposed to cover between the terminals named. The resolution, without more, not only fixed and determined the center line, but, unless otherwise expressed, operated as an appropriation of the land permitted by the act on which to construct the railroad: Phila. & Reading R. R. Co. v. Obert, 109 Pa. 193, 204; Marshall v. Pennsylvania Co., 44 Pa. Superior Ct. 68, 69; Dilts v. Plumville R. R. Co., 222 Pa. 516, 527-8; Jones v. Erie & Wyoming V. R. R. Co., 144 Pa. 629, 636. It fixed a servitude on the land over which it passed: Templeton v. Lehigh & Wilkes-Barre Coal Co., 50 Pa. Superior Ct. 341, 347; Johnston v. Delaware, Lackawanna & Western R. R. Co., 245 Pa. 338, 342.

If no width is designated in the resolution adopting the route, the full width will be presumed: Williams v. Delaware, Lackawanna and Western R. R. Co., 255 Pa. 133, 142. This case, and Johnston v. Delaware, Lackawanna & Western R. R. Co., supra, outline the procedure.

As there was no width fixed when the resolution was adopted, the presumption would be the company intended to take the full width permitted by the act, that is, sixty feet for roadbed, with such additional ground as might be necessary for deep cuts, fills, etc., or stations,

sidings and turnouts. The definitive discretionary act is the location on the ground of the line, and its adoption by corporate action. Establishing by metes and bounds the necessary width on the various tracts over which the road passes is contemplated by the act as an engineering detail. It is unnecessary, and manifestly so, that corporate action should precede this latter designation on the various properties to be taken.

When the petition for approval of the bond is filed, accompanied by a map designating the extent of the land to be taken, the owner knows precisely the quantity of land the company proposes to take. If he objects to it as unnecessary, he can protest, as was done in this case. But the lack of corporate action as to each piece of land would not stop the proceedings or defeat the action, provided the company justifies the taking of additional land over sixty feet to be within the act by showing the necessity therefor. This is a matter of engineering skill, considering the country through which the proposed road passes, the contour of the land and the character of the earth's strata with which, at the established grade, it comes in contact. There may be places where, because of the geological formation encountered, the cuts and fills will spread out to an unusual extent; at others it will be confined to a restricted area, due allowance being made for the action of the elements where cuts and fills are met.

The petition and bond did not set forth that the extra width was in the neighborhood of deep cuts and fills. The road was to be built through mountainous country, along precipitous hillsides; it would have been better practice to so state in the petition (Wilson v. Pittsburgh & Lake Erie R. R. Co., 222 Pa. 541, 546); but this insertion would not retard the proceeding nor will its omission nullify it. Evidence was submitted showing beyond question that the land was necessary for deep cuts and fills, but not as to all properties, the court below permitting amendments to the description so that

the land taken conformed to the widths necessary. All the requirements of the act were then complied with. There is nothing in Robinson v. P. R. R., 161 Pa. 561, that controverts this. As stated in that case (p. 570), "It is very clear from this testimony that an extra width of thirty-seven feet on each side of the center line, more than double the width the law allows, was taken, not for cuts or banks, nor for stations or sidings, etc., but for the general purposes of the road. This was in plain excess of the statutory authority."

It is not necessary, as contended, to specify the number of tracks it is proposed to construct, so as to bring the deep cuts and fills within the sixty feet; the company is entitled to that width in addition to land for cuts and fills: Phila. & Reading R. R. Co. v. Obert, supra, 202; Pennsylvania R. R. Co. v. Braddock Borough, 234 Pa. 312, 317; Pittsburgh, Ft. Wayne & Chicago Ry. v. Peet, 152 Pa. 488; Olyphant Borough v. Delaware & Hudson Co., 225 Pa. 147.

Objection is made to the condemnation of land in excess of sixty feet on which to relocate a highway in the same proceeding as the appropriation of land for a railroad, the condemnation proceedings not showing the land proposed to be used for a highway or for a railroad. Whatever land was taken for a highway was contiguous to that to be used for a railroad. The authority to condemn may be found in sections 10, 11, 12 and 13 of the Act of February 19, 1849, P. L. 79, 85. Section 13 (P. L. 85) provides that if a "railroad company shall find it necessary to change the site of any portion of......[a] public road, they shall cause the same to be reconstructed forthwith......on the most favorable location ......; provided that the damages incurred in changing the location......shall be ascertained and paid by such company in the same manner as is provided for in regard to the location and construction of their own road." Section 11 (P. L. 84) provides that "when the said company cannot agree with the owner or owners of any

lands......for the compensation proper for the damage
done or likely to be done to......such lands......which
such company may......take,......the court of com-
mon pleas of the proper county.....shall appoint.....
viewers......to determine......[the] damages.......
sustained,......and to whom payable."

Appellants contend no authority is granted to a rail-
road company occupying a public road, to condemn land
on which to reconstruct it; the proper procedure is in the
court of quarter sessions, to vacate and supply the road.
We cannot sustain this view. While it is true the high-
ways of the State belong to the Commonwealth, the au-
thorized power to interfere with them is the legis-
lature, and those subagencies delegated by it. The
legislature had ample power to permit a railroad com-
pany to occupy the bed of its highways. The Philadel-
phia & Trenton R. R. Co., 6 Wharton 25, 44; O'Connor
v. Pittsburgh, 18 Pa. 187, 189-90; Henry v. Pittsburgh
& Allegheny Bridge Co., 8 W. & S. 85; Mercer v. Pitts-
burgh, Ft. Wayne & Chicago R. R. Co., 36 Pa. 99, 104.
The act granting the authority, required the company to
relocate and reconstruct it. The sections of the statute
cited give ample power to take the land necessary for
this purpose under the right of eminent domain. The
Danville, Hazleton & Wilkes-Barre R. R. Co. v. Com.,
73 Pa. 29.

The purpose for which the land is taken is a public one.
The procedure to secure compensation is unquestionably
due process of law, and the authority for the taking is
definite and specific. Moreover, it is not necessary to
outline a particular procedure in the authorizing
statute when adequate reference is made as to where it
may be found (Cleveland & Pittsburgh R. R. Co. v.
Speer, 56 Pa. 325, 335), and, to do the thing required in
section 13, it is necessary to take additional land, other-
wise the grant would be defeated. The granting of a
power to accomplish a particular enterprise carries
with it the authority to do all that is necessary to that

end: Bridge Co. v. Stone, 63 L. R. A. 301; People ex rel. Green v. Railroad Co., 58 N. Y. 152, 163.

Pennsylvania Railroad Company's App., 128 Pa. 509, is not authority for the proposition that, either before or after the old roadbed is taken, the intervention of the court of quarter sessions is necessary to a valid relocation. The company did, in the proceedings leading up to that case, have viewers appointed by the court of quarter sessions, and it may be that is a wise procedure, so that a record may be made of the reconstructed road. But, as here stated, the question as to whether or not there should be a change in the public road is, by the Act of 1849, left to the discretion of the company in the first instance. Having determined to occupy the road, a new one must take its place. Is the change to the "most favorable location"? This is primarily a public question, though the company in the first instance determines what it shall be; and their action, so far as these proceedings are concerned, is conclusive on the owners of the property. It may be, as has been suggested, that the township authorities should be made parties to the condemnation, and in this manner the question of the most favorable location could be worked out, which would subsequently bind all parties. It must be evident the "most favorable location" does not mean any location the railroad company sees fit to select. The interest of the public is always to be considered, and the company is not the sole judge as to whether that interest has been served. It has been suggested that mandamus would compel the construction on the most favorable location, if not already there. This may be so, but we do not decide the question. This record precludes us from determining these matters, and, as we said above, the determination of the company in the selection of additional land for a public road is conclusive on the property owners, provided it is not an excessive taking; the evidence here shows it was not. If the road is not located on the most favorable location, and another is

selected, the land condemned and paid for as a public road will be released from that servitude, and title will return to the property owner. Whether the Public Service Commission has jurisdiction was not raised and is not here considered.

There is not the slightest reason,—at least where (there being no intervening spaces in the owner) the land to be used for public road and railroad join,—why they should not be included in the same condemnation proceeding, as was done in Pitznogle v. Western Maryland Ry. Co., 119 Md. 673, 87 At. Rep. 917, 46 L. R. A., N. S. 319, and in Pennsylvania in Ferguson v. The Pittsburgh & Shawmut R. R. Co., 253 Pa. 581, 584.

But in this proceeding the maps attached do not set forth either the center line of the highway, the proposed highway, or the quantity of land to be taken by metes and bounds. This is not a fatal defect, but it certainly must be remedied, so that the township authorities may know what land they may use for highway purposes. There is a very good reason why this should be done. If for any cause this strip of land is vacated by the public, title to it reverts to the owners. The easement of passage over a public road is very different from a railroad's use and occupancy of land acquired under condemnation proceedings. The necessity for an amendment to be filed setting forth on the various maps the metes and bounds of land taken for the public road is clear: Ferguson v. The Pittsburgh & Shawmut R. R. Co., supra.

Are roads and streets laid out and dedicated to public use, and used by the public, established roads or ways, within the meaning of section 12, of the Act of 1849, P. L. 84? The act reads, "Whenever, in the construction of such road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the......company so to construct the said road...... as not to impede the passage or transportation." The court below made findings of fact which apparently close appellants' contention. If these findings were material,

there was evidence to support them; but we do not see how the question can be raised in condemnation proceedings, for section 12 reads, they "shall......so...... construct the......road." The laying out of the road, adopting a route and taking property is not the physical construction of the road. What may or may not be done in construction raises independent and separate questions which, possibly under the Public Service Company Law, may be referable to the Public Service Commission. At present, we hold the question unnecessary for our decision.

It follows that the decrees of the court below in the several cases must be affirmed; appellee is permitted to amend its description on the maps filed in this case, so that the land taken for highways may appear by courses and distances.

The assignments of error are overruled and the decrees of the court below are affirmed, the cost of printing the paper-books on this appeal to be paid by the appellee.