# Heyl *versus* The Philadelphia, Wilmington and Baltimore Railroad Company *et al.*

1. The mere existence and use, for seventeen years, of a turn-out from the main track of a railroad company, chartered for general railroad purposes, and the receipts by the company from the owner of the turn-out for mending the turn-out, &c., do not give to him an irrevocable right to maintain a frog and switch on such railroad.

2. An incorporated railway company is a trustee of the right of way for the Commonwealth for the use of her citizens, and a permissive privilege from such company differs entirely from a privilege on private property by individuals, where the expenditure of money is to be attributed to a mutual understanding that the privilege should remain unaltered.

APPEAL from the Court of Common Pleas of *Philadelphia.* In Equity.

This was a bill by John B. Heyl against the Philadelphia, Wilmington and Baltimore Railroad Company and the Southwark Railroad Company.

The bill set out the incorporation of both companies, that the Southwark company leased to the Philadelphia, Wilmington and Baltimore company ; that the complainant owned a lot contiguous to the Southwark road, at which he carried on, and still carries on, the business of dealing in coal ; that on his application, the Southwark company, in 1847, gave him permission to connect a track to his lot, by a switch and frog, with the Southwark road ; that he made the connection at his own expense, and no terms or conditions were imposed upon him at the time, except payment of tolls, nor were any other terms imposed on other persons making similar connections ; that the complainant and other persons having like connections, were notified by the Philadelphia, Wilmington and Baltimore company that they would be

[Heyl *v.* Philadelphia, Wilmington & Baltimore R. R. Co.]

required to pay $50 annually in advance for such connections, and he was notified, August 26th 1863, that unless he did so his frog and switch would be taken out; averring that the license to him is irrevocable, and if the connection is removed it will do him irreparable injury, &c.

Respondents, by their answer, deny that they gave the complainant the privilege alleged; alleging that when his side-track was laid there was but one track of the Southwark railroad, and the complainant connected with that only; now there are two, and his track *crosses* the second, to the great disadvantage of the respondents, and complainant does not allege any license after laying the second track; that by their charter each of their said roads is declared "to be a public highway for the conveyance of passengers and transportation of merchandise and commodities, under such regulations as shall be prescribed by the directors;" that, under that authority, they have long since established a regulation that all persons using their track for a switch shall pay $50 per annum; that such switches are injurious to the road and the rolling stock, are a great inconvenience, a great additional expense, and seriously impair the enjoyment of their franchise; that the rent is hardly a compensation; that three-fourths of other persons having switches have willingly consented to this regulation, which is reasonable; and averring that the crossing of their road by a siding, without right, is a nuisance.

A general replication was filed, and the case referred to a master; on the coming in of the proof, the court below (Ludlow, J.) dismissed the bill, delivering the following opinion:—

"Undoubtedly a parol license may become irrevocable, if the person to whom the license was given has executed it by expending his money upon the faith of it: Le Fevre *v.* Le Fevre, 4 S. & R. 241; Rerick *v.* Kern, 14 S. & R. 267; McKellip *v.* McIlhenny, 4 Watts 317; Campbell *v.* McCoy *et al.*, 7 Casey 264. But in Pennsylvania, in each instance in which this doctrine has been maintained, there appeared undoubted proof of the existence of a license in favour of the party before the court, or in the person or persons through whom he claimed. In the case before us there is a total absence of direct testimony proving that a parol license existed, and the inferential evidence offered by no means establishes the fact; the existence or non-existence of a license is therefore the subject of grave doubt. And hence, if the complainant expects to sustain the position assumed by him, he must rely upon an adverse and immemorial usage and uninterrupted enjoyment for a period of time sufficiently long to raise, in point of law, the presumption which presupposes a grant. See Esling *v.* Williams, 10 Barr 126; Garrett *v.* Jackson, 8 Harris 335. The evidence establishes the fact that complainant has

[Heyl *v.* Philadelphia, Wilmington & Baltimore R. R. Co.]

enjoyed the use of the switch for seventeen or eighteen years on payment of toll; a period of time, it is true, of considerable length, and yet not sufficiently long to establish the right contended for. While we are ready to admit that where a party has induced another to expend time, money and labour on the faith of a promise, equity will compel the promissor to do that which ought to have been done, and will protect the promissee in the enjoyment of the thing promised; yet, in the absence of satisfactory proof of an agreement, license or promise, the court ought to determine the conflicting rights of parties according to those legal and equitable presumptions which have repeatedly been the subject of judicial determination, and which have, therefore, received legal interpretation and definite limits.

" Upon a question of law, therefore, under the evidence in this cause, the case of the complainant must fail.

" There·is another view which we take of this case equally fatal to the claim of complainant. It is alleged that the defendants in this bill granted a certain privilege to Heyl, to wit, the privilege of constructing a switch and frog, which should connect the yard of complainant with the defendants' road; but it is nowhere stated that it is the intention of the defendants to destroy this switch, but only to refuse to the complainant the right to connect with defendants' road unless the complainant pays for that right the sum of $50 per annum. Now, Heyl understood perfectly when he constructed his 'switch,' that he did so subject to the rights and powers of those corporations, specified in their charters. By the Act of Assembly of April 2d 1831, and supplements thereto, the Philadelphia, Wilmington and Baltimore Railroad Company had the right to demand and receive such sum or sums of money for tolls of persons or property as they should from time to time think reasonable, &c.; but both of these companies had; by their charters, the right to make such regulations as the directors should deem advisable, for each road is declared 'to be a public highway for the conveyance of passengers and transportation of merchandise and commodities, under such regulations as shall be prescribed by the directors.'

" Assuming, therefore, for the present the existence of a license to construct a switch and frog, the licensee must be taken, in the absence of testimony to the contrary, to have acted with a full knowledge of the power of the. directors from time to time to make such charges as would be reasonable and within the terms of these charters, and the mere use of the switch would not in any event destroy this right. .

" The case might be different had it appeared that there existed a grant, contract or license, specific in terms; but in the absence of proof of the existence of any such grant, contract or license,

[Heyl *v.* Philadelphia, Wilmington & Baltimore R. R. Co.]

nothing less than an uninterrupted adverse enjoyment of ·this switch for the period of twenty-one years would entitle the complainant to the relief which he now seeks at our hands."

Refusing the decree prayed for, and dismissing the bill, were assigned for error.

*D. W.· Sellers*, for appellant.—The complainant, with consent of the Southwark Railroad Company, constructed a turn-out at his own expense and no terms were imposed. It is not an adverse use, but a grant of a privilege. After twenty-one years' use the presumption is one of law; before that time the intention may be explained and a grant presumed in less time : Woodyer *v.* Haddon, 5 Taunt. 135 ; State *v.* Wilkinson, 2 Verm. 485 ; Rex *v.* Lloyd, 1 Camp. Cas. 260; Rugby Charity *v.* Merriweather, 11 East 375, note *a ;* Abbott *v.* Mills, 3 Verm. 529 ; Larned *v.* Larned, 11 Metc. 422 ; Noyes *v.* Ward, 19 Conn. 267 ; Winian *v.* Mayor, 11 Wend. 486 ; Livingston *v.* Mayor, 8 Id. 85; In the Matter of Twentyninth Street, 1 Hill 189 ; Jarvis *v.* Dean, 3 Bing. 447 ; Pearsall *v.* Post, 20 Wend. 114 ; Schenley *v.* City, 12 Casey 29.

It cannot be urged that under the circumstances the complainant could have been sued in trespass by the company; if not, the connection with their track was authorized. His improvements made on the faith of the connection are shown to be worth from $1200 to $1500. The license was irrevocable: Le Fevre *v.* Le Fevre, 4 S. & R. 240 ; Brown's Case, 2 Ves. Sr. 414; Strickler *v.* Todd, 10 Id. 63 ; Rerick *v.* Kern, 14 Id. 267 ; McKellip *v.* McIlhenny, 4 Watts 317–325 ; Garrett *v.* Jackson, 8 Harris 335 ; Pierce *v.* Cloud, 6 Wright 113.

The company have no power to impose these terms, and there was no contract. No terms were imposed when the license was given : Branson *v.* City, 11 Wright 330. The complainant's license continues as long as the defendants have their franchise.

*F. C. Brewster*, for appellees.—A license is a power to a man to do some lawful act: 11 Jac. Law Dict. tit. *License :* and is countermandable : 15 Viner, p. 94 ; Webb *v.* Paternoster, Poph. 151. If a certain time is limited it is not revocable ; otherwise it is : Jenk. 209, pl. 41 ; 246, pl. 35 ; 220, pl. 69 ; Bagshaw *v.* Bossley, 4 Term Rep. 82 ; Supp. to Vin. Ab. V. p. 183 ; Cook *v.* Stearns, 11 Mass. 537 ; Dexter *v.* Hazen, 22 Barb. 336 ; Wood *v.* Leadbetter, 13 M. & W. 837. Every license is in its nature revocable. When it is connected with a grant it may be irrevocable, but the grant must exist independently of the license, unless it be capable of being made by parol or by the instrument giving the license : Wood *v.* Leadbetter, *supra ;* Brooke's Ab. *License ;* Webb *v.* Paternoster, *supra ;* Roll. 143, 152 ; Palm. 71 ; Poph.

[Heyl v. Philadelphia, Wilmington & Baltimore R. R. Co.]

151; Godbolt 282; Rex v. Herndon, 4 M. & Sel. 562; Ex parte Coburn, 1 Cow. 370; Miller v. Auburn Railroad Co., 6 Hill 61; Cook v. Stearns, 11 Mass. 533; Ruggles v. Sesure, 24 Pick. 190; Prince v. Case, 10 Conn. 375; Woodward v. Selly, 11 Ill. 157.

A grant by a public agent is different from one by an individual: Susquehanna Canal Co. v. Wright, 9 W. & S. 12; New York and Erie Railroad Co. v. Young, 9 Casey 181; Wartman v. City, Id. 211; Woelpper v. City, 2 Wright 205. Parol license of an easement is destroyed by the sale of the servient land: Wallis v. Harrison, 4 M. & W. 538; Cocker v. Cooper, 5 Tyrwhitt 103; Fentiman v. Smith, 4 East 107.

The creation of an interest in hereditaments incorporeal, except rents, can be made effectual only by grant under seal: Baudeley v. Brook, Cro. James 189; Rivetts v. Godson, Sir Wm. Jones 179; Hays v. Richardson, 1 Gill & Johns. 366; 2 Am. Lead. Cases 736; Dexter v. Hazen, 10 Johns. 246; Wolf v. Frost, 4 Sandf. Ch. 72; 2 Am. Lead. Cases 752; Clinton v. McKenzie, 5 Strobh. 36; Woodward v. Seeley, 11 Ill. 157; Roberts v. Rose, 10 Law Times R. 624.

The complainant knew that the defendants had a right by their charter to make such regulations as they chose. He cannot, therefore, maintain his switch without paying the charges which he knew defendants had a right to make.

The opinion of the court was delivered, February 19th 1866, by

AGNEW, J.—The license set forth and claimed in the plaintiff's bill was denied in the answer, and is not sustained by the proof. It rests on no agreement written or oral, and cannot be inferred from the payment of tolls for the use of the road. From the mere existence and use of the turn-out from the track for seventeen years, and the receipts for mending the siding, and the expense of the castings, &c., we are asked to infer an agreement for an absolute, enduring and irrevocable right to maintain a private switch and frogs in the track of a railroad, built under a charter for general railroad purposes. The limited use of the track heretofore cannot change the character of the powers and duties of the company. We can infer a permissive use of the track in this way from the facts in evidence. But to suppose that the company, which is but a trustee of the right of way for the Commonwealth for the use of her citizens, intended to grant a privilege for all time, and without compensation or control, is incompatible with the nature of the subject and the duties of the corporation, and is wholly improbable.

It is not the siding into the plaintiff's lot, but the obstruction in the track, which interferes with the company's rights. The switch is an opening directly in the line of the track, breaking its

[Heyl *v.* Philadelphia, Wilmington & Baltimore R. R. Co.]

continuity, exposing the company to the dangers of accident, and imposing the expenses of guarding and maintaining its proper relation to preserve a continuous rail.   So the frogs lie directly in the line of travel, obstructing its free use, and causing great wear and tear of machinery.   How can it be supposed a company chartered to build a highway for the conveyance of passengers, and the transportation of merchandise, intended, when it suffered this direct interference with its track, to concede a right to maintain it for ever, no matter what might be the increased demands of travel and trade, and the changes of business ?  . How can it be supposed that the plaintiff himself, who must be presumed to know the public objects of such a highway, would be so misled as to believe he was acquiring an enduring right to control the use of the highway to his private ends ?   It is inconceivable that any one should think that a mere act of sufferance would vest in him a permanent title to maintain an opening and a damaging obstruction to the track free of all charge.   There is no agreement, and not being misled, there can be no estoppel..  In order that the improvements on his own lot to adapt it to his trade should operate, he must convince us that they were induced by such acts and representations of the. defendants as warranted him fully in believing that the right conceded to him was such as he sets forth in his bill.

This case differs totally· from those instances of privilege in or upon private property granted by individuals having an absolute dominion over their own estates, fettered by no public duty, where the expenditure of money in pursuance of the license can be accounted for on no other presumption that. that of a mutual understanding that the privilege should remain unaltered.   The nature of the property, the duties of the corporation, its limited powers, and the character of the gap in one track and of the' obstruction in the other, all unite, in the absence of express agreement, to convince us that no fixed, unalterable and unburthened privilege was conceded.   Without any case precisely in point, some of the numerous citations of the defendants contain principles which assist in leading us to this conclusion.

The judgment is therefore affirmed.