# Templeton, Appellant, *v.* Lehigh & Wilkes-Barre Coal Company.

*Railroads—Eminent domain—Acquisition to title of right of way.*

1. The right of way of a railroad company may be acquired through the exercise of the right of eminent domain, although no proceeding has been resorted to in the court of common pleas for the purpose of ascertaining the damages caused by the taking or injury to the property. If after the location of the right of way by appropriate action of the directors upon the preliminary surveys of the engineers, the company and the owner of the land agree as to the damages, and the company pays such damages, an absolute title to the right way of vests in the railroad company, and it is not necessary that the agreement and the payment of the money shall be evidenced by a deed duly recorded.

2. Where a railroad company locates its right of way over the lands of an intestate decedent, and the administrator of the decedent authorized under the Act of April 2, 1853, P. L. 285, to sell the real estate with the assent of the widow and guardian of the minor children of the decedent, files a petition in the orphans' court asking leave to settle with the railroad for a right of way sixty feet wide for a sum stated, and such leave is granted by the court, and it appears from the subsequent records of the court that the money was actually paid to the administrator by the company, receipted for by him with an agreement to execute a release to the company, and that the money was subsequently distributed to the parties in interest, the company has acquired an absolute title to the right of way; and a person who has

acquired title through mesne conveyances to the lands of the decedent cannot, fifty years thereafter, assert a title to a portion of the right of way because there is no evidence that the administrator ever actually executed a release to the railroad company for the right of way.

3. In such a case where it appears that the company maintained upon the right of way thus acquired one or more railroad tracks, it has done all that was necessary to assert its right to the entire width of sixty feet. It is not bound to cover its entire right of way with tracks, and its failure to do so does not expose it to the danger of losing a part of its right of way because of mere nonuser. It has the right to provide within the limits prescribed by law for future needs. An intruder cannot by any length of adverse use acquire a title as against the public right, for the railroad is by statute, a public highway.

4. An agreement by which a railroad company gives a coal company the right to use certain side tracks without excluding the railroad company from the use of such tracks, does not constitute an abandonment by the railroad company of a part of its right of way for railroad purposes.

Argued March 5, 1911.    Appeal, No. 32, March T., 1912, by plaintiff, from judgment of C. P. Luzerne Co., Oct. T., 1909, No. 1,413, on verdict for defendants in case of Hugh Templeton v. The Lehigh & Wilkes-Barre Coal Company and The Delaware, Lackawanna & Western Railroad Company.    Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.    Affirmed.

Ejectment for a strip of land in Plymouth borough. Before JONES, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

Railroad companies are invested with what is known in the law as the right of eminent domain. That is a right to take private property for public use; to enter upon and into and occupy all land on which the railroad may be located, provision being made by the act of assembly for compensation proper to the owner of the land for the damage done or likely to be done or sustained by any manner of land of which the company may enter upon, and secures to the railroad company a right of way sixty

feet wide.  In pursuance of this power the Lackawanna & Bloomsburg Railroad Company, now merged into the Delaware, Lackawanna & Western Railroad Company, laid out, located and constructed a railroad across the lot of Samuel Davenport, deceased, in the borough of Plymouth. [3]

Plaintiff presented these points:

5. Where the terms of a grant of a right of way are general and indefinite, its location and use by the railroad company acquiesced in by the adjoining owners will have the same effect as if it had been fully described by the terms of the grant.  *Answer:* That is right as a general proposition of law.  Bear in mind in this case, gentlemen of the jury, this railroad company was entitled as against the plaintiff in this case to a right of way sixty feet wide. [4]

10. The orphans' court proceeding in the estate of Samuel Davenport, deceased, offered by defendants, are not sufficient to create a title to the land in controversy, first, because no deed was made and delivered to the railroad company by the executor; secondly, because the railroad had been located prior to the date of the proceedings, and on the face of the proceedings it was a mere release of damages; thirdly, because no definite location is fixed and no monuments mentioned showing the location.  *Answer:* These points I deny.  I cannot affirm them. These proceedings having been duly confirmed by the orphans' court, the law will presume, after nearly fifty years, that everything that was necessary to be done in order to divest the title of Samuel Davenport was done, and second, the purchase money having been accounted for by the administrator and distribution regularly made and the money receipted for by the administrator and receipted for by the heirs, they, and those claiming under them are estopped from now claiming the land. [5]

The Delaware, Lackawanna & Western Railroad Company had no authority to grant or lease to the Lehigh & Wilkes-Barre Coal Company, an independent right of way parallel with its own railroad for the use of the Le-

high & Wilkes-Barre Coal Company in the prosecution of its coal business in transporting coal from its mine to its breaker and for this purpose to open its roadway between the line of plaintiff's lot. *Answer:* Refused. [8]

7. Although the Delaware, Lackawanna & Western Railroad Company might have occupied less than sixty feet at the point in question, yet it had no authority to widen out its right of way for the purpose of leasing a portion of it to the Lehigh & Wilkes-Barre Coal Company, a private corporation, for its use in operating its mines, a use entirely independent of the use of the right of way by the Delaware, Lackawanna & Western Railroad Company. *Answer:* Refused. [9]

8. If the court be of opinion that the Delaware, Lackawanna & Western Railroad Company has by reason of its lease to the Lehigh & Wilkes-Barre Coal Company of the strip of land embraced in its lease, legally abandoned that portion of the land embraced within the said land, then the title to the said strip of land embraced in the lease reverted to the adjoining owner, the plaintiff, even though it might have originally been within the sixty feet of land authorized to be taken by the railroad company, in which case the plaintiff would be entitled to recover the land embraced in the writ of ejectment, and the verdict should be in favor of the plaintiff. *Answer:* Refused. [10]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (3, 4, 5, 8, 9, 10) above instructions, quoting them.

*J. Q. Creveling,* for appellant.—The interest of an heir at law in the land of a decedent is not divested by an orphans' court sale of the estate of the decedent therein for the payment of debts, until the confirmation of such sale by the orphans' court and the execution and delivery of a deed to the orphans' court, vendee: Greenough v.

Small, 137 Pa. 132; Leshey v. Gardner, 3 W. & S. 314; Behrens v. Mountz, 37 Pa. Superior Ct. 326; Bren an's Est., 220 Pa. 232; Crawford's Est., 221 Pa. 131; Warner v. Henby, 48 Pa. 187.

If the plaintiff shows that he and his predecessors have had a continuous adverse possession of the strip of land for over forty years, the burden is upon the railroad company to show that the land was embraced within the limits of the right of way acquired by condemnation proceedings: Bassett v. Penna. R. R. Co., 201 Pa. 226.

*Andrew H. McClintock*, with him *D. R. Reese, J. H. Oliver* and *Arthur Hillman*, for appellees.

OPINION BY PORTER, J., July 18, 1912:

The plaintiff brought this action of ejectment to recover possession of a narrow strip of land, described in the præcipe as being eighty-four feet long and twelve and two-tenths feet wide at one end and fourteen and five-tenths at the other, and bounded on the northwest side by a concrete wall recently erected and on the southeast side by the line of the Delaware, Lackawanna & Western R. R. Co. It appeared, at the trial, that both parties claimed under Samuel Davenport, deceased. The plaintiff had derived his title, through sundry conveyances, from the heirs of Samuel Davenport, his deeds conveyed two adjoining lots fronting on Main street in the borough of Plymouth; the first, dated 1873, described one of the lots as extending back southerly 200 feet deep to the Lackawanna & Bloomsburg R. R., and the second deed, dated 1892, described the lot thereby conveyed as extending back southerly from Main Street "about 300 feet," "to the line of the Lackawanna and Bloomsburg R. R. Co." The undisputed evidence established that the actual distance from Main street south to the line of the concrete wall in question was 341.7 feet. The plaintiff is, therefore, in possession of lots, exclusive of the strip in controversy, which are of a depth of at least forty-one

feet greater than the description called for in his deeds. His deeds call, however, for the line of the Lackawanna & Bloomsburg Railroad Company, and under them he is entitled to take to the line of the right of way of that company, he is entitled to all the land that his deeds call for, but he can take only to the line of the right of way of the railroad company, if such right of way existed. The real point in controversy in this case involved the exact location of the line of the right of way of the Lackawanna & Bloomsburg Railroad Company, to which right the Delaware, Lackawanna & Western Railroad Company, one of the defendants, is admitted to have succeeded. The plaintiff contends that the railroad company never had acquired title to its right of way through the exercise of the right of eminent domain, and that as the defendants had failed to show title to their right of way by a deed which had been duly recorded before plaintiff placed his deed upon record, that therefore the railroad company had title only to the space actually occupied by its tracks, at the time plaintiff became a purchaser. The verdict and judgment in the court below were in favor of the defendants and the plaintiff appeals.

The contention of the plaintiff that the right of way of a railroad company is not acquired through the exercise of the right of eminent domain, unless it appear that a proceeding in the court of common pleas was resorted to for the purpose of ascertaining the damages caused by the taking or injury to property, is not well founded. The successive steps necessary to the acquisition of title to a right of way by a railroad company in the exercise of the power of eniment domain, under our statutes, are clearly defined, and have been frequently commented upon in the decisions. The statute authorizes a preliminary entry on the lands of private owners for the purpose of exploration; this is made by engineers and surveyors who run and mark out experimental lines, and report their work with maps and profiles necessary to give proper information to the company which employs them.

The selection and adoption of one of the lines so run, as and for the proposed railroad, is done by the corporation, and requires the action in some form of the board of directors. This makes what was before experimental and open, a fixed and definite location. It fastens a servitude upon the property affected thereby, and so takes from the owner and appropriates to the use of the corporation. This act of location is at the same time the act of appropriation. As to third persons and rival corporations, the action of the company in adopting a definite location is enough to give title. In order, however, to acquire title as against the owner there must be the third and final step, viz.: payment for what is taken and the consequences of the taking, or security that it shall be made when the amount is legally ascertained. "The title of the owner is not divested until the last of these steps has been taken. . . . As against him the corporation can acquire only a conditional title by its act of location, which ripens into an absolute one upon making compensation:" Williamsport R. R. Co. v. Railroad Company, 141 Pa. 407; Johnston v. Callery, 173 Pa. 129, and 184 Pa. 146. After the act of location by the company, the owner or the company may proceed at once to secure an ascertainment of damages. When a railroad company has thus entered adversely upon the lands of an owner and located its line, under the right of eminent domain, the statute requires the parties, unless the owner is absent or legally incapacitated, to make an effort to agree as to the damages to be paid for the taking and the consequences of the taking, and it is only in case of a failure to agree that it is necessary to invoke the action of the courts: Arnold v. Buffalo, etc., Railway Co., 32 Pa. Superior Ct. 452. When the parties agree upon the amount of damages to be paid the payment of the money vests an absolute title to the right of way in the railroad company, the statute does not require that this agreement and the payment of the money shall be evidenced by a deed duly recorded. The company may take a deed, but this is for convenience, all that is

necessary is that it shall procure some satisfactory evidence that the amount of the damages has been agreed upon and paid. When there is a failure to agree, either the owner or the corporation may petition the court for the appointment of viewers to ascertain the damages, and thereupon the company has the right to furnish security, to be approved by the court, for the payment of such damages as may be thereafter ascertained to be lawfully due, and upon the giving of such security the title to the right of way vests in the company, and in this case, also, payment of the damages, when the amount is ascertained, is a discharge of the liability of the company, no formal release being necessary.

The following facts are in the present case undisputed. Samuel Davenport died in 1850, seized of a tract of land in Plymouth, leaving several children, all then minors. Henderson Gaylord was duly appointed administrator of his estate, and by Act of assembly of April 2, 1853, P. L. 285, was specially authorized to sell the real estate of said decedent, report of such sales to be made to the orphans' court, accompanied by the assent, in writing, to such sales, of the widow and the guardian of the minor children of said decedent, and upon the approval of such sales by said court, and bond given and approved, the court was authorized thereupon to confirm the said sales absolutely, and the administrator was empowered to convey the lands so sold. The Bloomsburg & Lackawanna Railroad Company, to all of whose rights the Delaware, Lackawanna & Western Railroad Company has succeeded, was duly incorporated and vested with the power of eminent domain and some prior time to 1858 not only located its line but actually constructed a single track railroad across the lands of Samuel Davenport, deceased. There was not a scintilla of evidence in the case which would have warranted a finding that this entry of the railroad upon the lands was other than adverse and in the exercise of the right of eminent domain. The minutes of the company of May 18, 1858, were offered in evidence,

showing a resolution adopted by the board of directors agreeing to the payment to the heirs of Samuel Davenport, in full of their claim for damages, of the sum of $200 at two years with interest. Henderson Gaylord, administrator of Samuel Davenport, deceased, on April 15, 1861, presented to the orphans' court of Luzerne county his report stating: "That whereas the Lackawanna & Bloomsburg Railroad Company have lately laid out, located, and constructed their road on a lot of land of said decedent in Plymouth and it is advantageous to said decedent's estate, that the offer made by said company of $200, with interest, payable in two years, as a compensation for damages in said construction, should be accepted, and said administrator in consideration of said offer and to save the cost and expense of a proceeding in law to determine said question of damages, and being satisfied that he is acting in the premises for the advantage of the estate has accepted the proposition of the company and agreed to take the said sum and give a release to said company for a right of way over said tract of land according to law." Then follows, in the report, a description of the land, giving the names of the adjoining owners, the land covered by the right of way being thus described: "Said strip of land being 60 feet wide by $28\frac{3}{4}$ rods long, beginning at the John Davenport line, and the interest of said Samuel Davenport, deceased, of the same width, and 19 feet long at the Reynolds line, where a private road is now used." This report was accompanied by a draft or map, showing the right of way of the railroad company to be sixty feet wide and giving the courses and distances of its length, and indicating the names of the adjoining owners. This report was accompanied by the assent in writing of the widow and the guardian of all the minor children of the decedent, and upon its presentation the court approved the sale and ordered the report to be filed and directed the administrator to give bond in the sum of $400 with surety. The bond of the administrator was duly filed and approved on the 20th of

the same month, and the court thereupon confirmed the sale absolutely. The terms of the act of assembly, above referred to, under which this proceeding was had were fully complied with. It thus appeared that the railroad company, after having located and constructed its line, had made an offer to the administrator, the widow, and the guardian of all the children of Samuel Davenport, deceased, of a sum which was satisfactory to said parties, who joined in the proceeding to have the orphans' court approve of the agreement, which that court had done. All that remained to be done to complete the transaction was to be done by the parties, the railroad company was to pay the amount agreed upon and thereupon, by the express terms of the agreement which the court had approved it became the duty of the administrator to execute a release; no further action of the court was necessary in the premises. The fact that the administrator of Samuel Davenport, the widow and the guardian of the minor children were exercising powers, and the court a jurisdiction conferred by a special act of assembly must not be ignored. The undisputed evidence established, and it is an admitted fact in this case that the railroad company paid the amount of the damages agreed upon, with interest thereon, to the administrator, who signed and delivered to the company his written receipt for said money, in which receipt it was stated to be in full for said right of way, and in that receipt these words were included, "and I agree to make, and execute a release to the above company for the said right of way." The fact of the payment by the railroad company to the administrator of the amount of the damages agreed upon being admitted, the only thing which remained to effect complete performance of the decree of the orphans' court was that the administrator, having received the money, should execute a formal release of the right of way, which it was his duty to do without further action by the court or the railroad company.

The records of the orphans' court offered in evidence

disclose, and the plaintiff admits, that the administrator
of Samuel Davenport included in his account the money
which he had received as damages for this right of way,
and that money was distributed, with other funds of the
estate, to the parties thereto entitled, the heirs of Samuel
Davenport, who were the owners of the property at the
time the railroad company appropriated the land for its
right of way.  The plaintiff thus admits all the facts
necessary to establish the legal and equitable right of the
railroad company to a right of way across the lands.
His contention is that unless the company can produce a
formal release, executed by the administrator, all that was
done, including the payment of the damages, must go for
nothing.  There is in the case no evidence as to whether a
formal release ever was or was not executed by the admin-
istrator.  The admitted facts clearly placed upon the ad-
ministrator the duty of executing the release, for the right
of way as described in the proceeding in the orphan's court.
The orphans' court having confirmed the sale and directed
the administrator to execute the release upon payment
of the damages, the damages having been paid more than
fifty years ago, the money thus received by the admin-
istrator having been duly accounted for by him and
having been distributed to the heirs, and the company
having maintained and operated during all the intervening
years a public railroad track within the right of way, the
law will presume after such a lapse of time that the ad-
ministrator executed the release, which it was clearly
his duty to do, if such release was necessary: Fink v.
Miller, 19 Pa. Superior Ct. 556.

No question arises in this case as to the right of the
administrator to receive the damages arising from the
appropriation of the right of way by the railroad company,
for the administrator accounted for the money and paid
it over to the heirs, the owners of the land.  None of the
heirs of Samuel Davenport have ever questioned that
proceeding.  In the deeds which they executed after
becoming of full age and under which this plaintiff claims

title to the lots which he now holds, those heirs expressly recognized the existence and validity of the right of way of the railroad company and called for it as a boundary. That right of way was sixty feet wide and it was acquired by the company in the exercise of the right of eminent domain. All these things were directly in the line of title of this plaintiff and of them he was bound to take notice.

When the railroad company thus acquired a right of way sixty feet wide and constantly maintained upon it one or more railroad tracks used in the public service, that was the best assertion of a right to the entire width that could in the nature of railroad construction and operation be demanded. The company was not bound to cover its entire right of way with tracks and the failure to do so would not expose it to the danger of losing a part of its right of way, because of mere nonuser. The company in securing its right of way has the right to provide, within the limits prescribed by law, for future needs. It may construct within its right of way the one or more tracks necessary to provide for the accommodation of the present public business, and may construct in the future such additional tracks as the growth of the business may require. When the right of way of a railroad company has been lawfully acquired and a railroad constructed and operated thereon, the intrusion by an individual upon portions of the right of way not in actual use by the company cannot vest the intruder with title under the statute of limitations, as against the public right, for the railroad is by statute made a public highway: Pennsylvania Railroad Co. v. Freeport Borough, 138 Pa. 91; Northern Pacific Railroad Co. v. Townsend, 190 U. S. 267; Sapp v. Northern Central Ry. Co., 51 Maryland, 115; D., L. & W. R. R. Co. v. Newton Coal Mining Co., 6 Kulp, 21; Stevenson's Appeal, 17 Weekly Notes of Cases, 429; East Tennessee, Virginia & Georgia R. R. Co. v. West, 10 L. R. A. 855; Heyl v. P., W. & B. R. R. Co., 51 Pa. 469; Pittsburg, Fort Wayne & Chicago Railway Co. v. Peet, 152 Pa. 488. There was no evidence in this case which

would have warranted the submission to the jury of the question of the right of the plaintiff to title under the statute of limitations. The defendant company produced evidence showing that it had constantly maintained and operated one or more tracks within the right of way originally acquired, and tending to establish that the present north track was upon the exact location of the single track originally laid within the right of way. If that evidence was believed the strip of land in dispute was within the right of way of the company. The only question of fact, under the evidence, was as to the exact location of the right of way of the company, and that question was submitted to the jury with instructions of which the appellant has no cause for complaint.

We find nothing in the evidence to justify the contention that the agreement entered into by the Delaware, Lackawanna & Western Railroad Company and the Lehigh & Wilkes-Barre Coal Company, constituted an abandonment by the former of a part of its right of way for railroad purposes. The agreement as printed in the appellant's paper-book does not disclose that the railroad company surrendered dominion over any part of its right of way or that it contemplated the use of the land for other than railroad purposes. It does give the coal company the right to use certain side tracks, but does not exclude the railroad company from the use of such tracks. The joint use by the railroad company and large shippers of side tracks and switches, within the limits of the right of way, is one of the usual and ordinary incidents of the business, and so long as all shippers are afforded the same facilities and treated alike, under similar conditions, it involves no violation of the public duty of the company. The assignments of error are all dismissed.

The judgment is affirmed.